UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK EDWARD MINIE,

                    Plaintiff,

        v.

SELENE FINANCE L.P., a foreign
corporation, and MTGLQ INVESTORS,
L.P, a foreign limited partnership,

                    Defendants.

CASE NO. 3:18-cv-05364-RJB

ORDER ON PLAINTIFF'S
MOTION TO AMEND, MOTION
TO STRIKE, AND ON
DEFENDANTS' PARTIAL
MOTION TO DISMISS

THIS MATTER comes before the Court on the Defendants' Partial Motion for Dismissal (Dkt. 33), the Plaintiff's Motion to Strike (Dkt. 41), and the Plaintiff's Motion for Leave to Amend Complaint (Dkt. 38). The Court has considered the pleadings filed regarding the motions and the remainder of the file herein.

Filed on May 9, 2018, this case arises from a dispute over a mortgage and foreclosure proceedings. Dkt. 1. For the reasons provided below, the Defendants' partial motion to dismiss

(Dkt. 33) and the Plaintiff's motion for leave to amend (Dkt. 38) should both be denied, in part, and granted, in part. The Plaintiff's motion to strike (Dkt. 41) should be denied.

## I.     PROCEDURAL HISTORY, MOTIONS, AND FACTS ALLEGED

### A. RELEVANT PROCEDURAL HISTORY

According to the current operative complaint, the Amended Complaint, "[t]his case involves a mortgage servicer's certified bad faith delay and obfuscation in foreclosure mediation which undermined alternatives to foreclosure otherwise available to [Plaintiff] the homeowner." Dkt. 12. Named defendants are MTGLQ Investors, L.P. ("MTGLQ") as the mortgage beneficiary to the defaulted loan, and Selene Finance, L.P. ("Selene"), as the loan servicer and debt collector acting on behalf of Defendant MTGLQ during the mediation. *Id*. The Amended Complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601, *et. seq*., Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et. seq*., the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq*., the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et. seq.*, and makes a claim for breach of contract. *Id*. Subject matter jurisdiction is alleged under 28 U.S.C. § 1332, diversity jurisdiction, and 28 U.S.C. § 1331, federal question jurisdiction. *Id*. The Amended Complaint has several documents attached. *Id.*

The Counterclaim filed by Defendants alleges that Plaintiff defaulted on a loan held by MTGLQ. Dkt. 13. It seeks judicial foreclosure and money judgment on the unpaid debt, including interest and fees, in excess of $532,855. Dkt. 13.

### B. DEFENDANTS' PARTIAL MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND

Pursuant to Fed. R. Civ. P. 12(c), the Defendants move for partial dismissal of the Plaintiff's Amended Complaint. Dkt. 33. Defendants argue that the RESPA claim asserted

against Selene should be dismissed because the Amended Complaint bases the claim on 12 C.F.R. 1024.38 of Regulation X, and there is no private right of action for that regulation. *Id.* The Defendants maintain that the Plaintiff's ECOA claim should be dismissed because the Plaintiff makes no allegation that he applied for credit such that 12 C.F.R. 1002.14 of Regulation B was triggered. *Id.* They argue that the Plaintiff's FDCPA claims (asserted under 15 U.S.C. 1692e and 1692f) should be dismissed because the Plaintiff fails to plead a specific communication or action by Selene that violated the FDCPA, and non-judicial foreclosures in Washington are in rem proceedings and not "collection of a debt." *Id.* The Defendants assert that the Plaintiff's CPA claims asserted against Selene should be dismissed because Selene was only the agent of MTGLQ at the mediation, not the principal, and aside from the allegations related to the mediation, there is no other independent ground asserted to find Selene's actions "unfair or deceptive." *Id.* They argue that the claims for breach of contract asserted against both Selene and MTGLQ should be dismissed because the Plaintiff breached the contract first. *Id.* Further, they maintain that the Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because the Plaintiff failed to identify breach of a specific contract term by either Selene or MTGLQ. *Id.*

The Plaintiff responds and opposes the motion to dismiss (Dkt. 37); he also files a motion for leave to amend the Amended Complaint (Dkt. 38) and attaches a red lined version of a proposed second amended complaint (Dkt. 38-1).

The Defendants reply, and argue the partial motion to dismiss should be granted. Dkt. 39. The Defendants also oppose the motion to amend, maintaining that amendment would be futile for the reasons stated in their partial motion to dismiss, and that, as to the new claims asserted, they should be dismissed for failure to state a claim for relief. Dkt. 46.

The Plaintiff filed a reply related to his motion for leave to amend (Dkt. 47), arguing that the motion to amend should be granted.

The Plaintiff also filed a surreply, seeking to strike portions of the Defendants' pleadings. Dkt. 41. The Plaintiff argues that all Selene's assertions that it was not liable because it was acting as an agent should be stricken as irrelevant, invalid and redundant. *Id.* He moves to strike Selene's assertion that its' misrepresentations were inconsequential. *Id.* Lastly, the Plaintiff moves to strike the Defendants' "argument that lawsuit was a breach of good faith."

The Defendants' motion for partial dismissal should be considered in light of the Plaintiff's proposed second amended complaint. The facts asserted in that pleading follow.

## C. **FACTS IN THE PROPOSED SECOND AMENDED COMPLAINT**

According to the proposed second amended complaint, in November of 2007, the Plaintiff refinanced the mortgage on his home, located at 115 Glacier Ridge Road, Quilcene, Washington. Dkt. 38-1, at 3. In 2008, the Plaintiff experienced employment instability, and applied for and received loan forbearance and a loan modification. *Id.*

In 2015, the Plaintiff defaulted on the loan. Dkt. 38-1, at 4. He began working with a Housing and Urban Development approved housing counselor to help him resolve the mortgage default. *Id.* By December 2016, with the help of his housing counselor, the Plaintiff decided that, due to his income, he was unable to keep the property. *Id.* He was referred to foreclosure mediation and a date was set for mediation with the Kitsap County Dispute Resolution Center. *Id.*

The proposed second amended complaint alleges that by early 2017, Plaintiff began to make arrangements to short-sell the property. *Id.* The property was listed for sale in January of 2017 for $275,000. *Id.* Selene became the loan servicer. *Id.* Selene was represented by the law firm

that represents it in this case. *Id.* After the first offer of $190,000 was made on the property, in April of 2017, the Plaintiff's housing counselor submitted Plaintiff's first short-sell offer to Selene with a proposed closing date at the end of May. *Id.* The Plaintiff asserts that Selene failed to respond and "left Plaintiff's housing counselor out of the loop, excluding Plaintiff's housing counselor from necessary communication." *Id.*

According to the Plaintiff, Selene created several unnecessary delays that "required a postponement of the foreclosure mediation" and forced all the parties: the Plaintiff, his housing counselor, and the mediator to reschedule it several times. *Id.*

The Plaintiff maintains that Selene took further actions that unreasonably delayed the short-sell closing. Dkt. 38-1, at 4. It began to demand documents the Plaintiff's housing counselor had already sent it. *Id.* For months, it failed to respond to any emails sent to it, despite being reminded that it should contact the housing counselor, the real estate agent and the mediator as well as the Plaintiff. *Id.* Finally, Selene sent the Plaintiff a bill on May 8, 2017 for a "property inspection fee." *Id.* When the Plaintiff's housing counselor inquired of Selene whether this meant that it had finally ordered an appraisal or some sort of valuation assessment (like a broker's price opinion) and requested his file be given quick attention so that the short-sell could proceed. *Id.* Selene did not respond for weeks. *Id.* The proposed second amended complaint alleges that one of the lawyers representing Selene finally replied on May 17, 2017, misrepresenting that Selene had reached out to the Plaintiff and his real estate agent "multiple times" to try and set up a time to do a value assessment of the property, but were unable to get them to respond. *Id.*, at 5. The Plaintiff maintains that Selene, in fact, never contacted him or the real estate agent about setting up a time for an inspection. *Id.* Around May 22, 2017, Selene asserted that the property was worth $250,000. *Id.*

By June 21, 2017, neither the Plaintiff nor his housing counselor heard from Selene about scheduling a valuation. Dkt. 38-1, at 5. The Plaintiff's housing counselor again emailed Selene's lawyers and asked that his file be given attention. *Id.* In late June 2017, Selene emailed the Plaintiff's housing counselor and demanded $230,000; although the house had been on the market six months and the only offers the Plaintiff received were for $190,000 and $170,000. *Id.* The Plaintiff maintains that Selene's offer was unreasonable – no interior valuation assessment had been done – if it had Selene would be aware that extensive repair was needed inside the house. *Id.* Selene ignored inquiries on how the $230,000 valuation was reached until July 20, 2017, when the housing counselor learned that Selene was contacting the Plaintiff directly, excluding the housing counselor and foreclosure mediator. *Id.* On July 26, 2017, the foreclosure mediator emailed Selene's lawyers demanding that they respond. *Id.*

On August 1, 2017, the mediator certified Selene's bad faith participation in the foreclosure mediation, due, in part to its failure to provide "timely and/or accurate documents" and failure to "timely participate in mediation." Dkt. 38-1, at 5 and 2-1 at 1-17.

The proposed second amended complaint also asserts that later in 2017, Selene again accepted a short-sell application from the Plaintiff. Dkt. 38-5, at 6. The Plaintiff alleges that "Selene ignored the market realities and refused to negotiate. The parties re-entered foreclosure mediation upon Selene's reissuance of a notice of trustee's sale." *Id.*

The Plaintiff alleges that on April 18, 2018, Selene and the Plaintiff executed a Deed in Lieu of Foreclosure Agreement ("DIL"), requiring the Plaintiff to vacate the property, show clear and marketable title, and voluntarily deed the property to MTGLQ. Dkt. 38-5, at 6. There was an IRS tax lien on the property. *Id.* The Plaintiff alleges that Selene initially prepared the forms required for Plaintiff to apply with the IRS for a tax lien release, but Plaintiff alleges that Selene

included irrelevant and misleading information, resulting in delays and in the Plaintiff having to correct the forms and pay for an updated appraisal. *Id.*

According to the proposed second amended complaint, on April 27, 2018, the IRS granted the Plaintiff's request for a tax lien release, to last 30 days – to May 27, 2018. *Id.* In order to finish the process within the timeframe set by the IRS, and to meet the DIL's requirement that he vacate the property, the Plaintiff hired movers and reserved his next living space. *Id.,* at 7.

On May 9, 2018, the Plaintiff filed this case. Dkt. 1.

The proposed second amended complaint alleges that, on May 23, 2018, at the foreclosure mediation, Selene announced that it was revoking the DIL agreement because the Plaintiff filed this lawsuit. Dkt. 38-1, at 7. It asserts that Selene "invoked the termination clause in the DIL agreement falsely stating that the litigation affected title to the property or interfered with a valid transfer of clear and marketable title." *Id.* It maintains that "Selene's revocation is what affected title to the property by allowing the IRS lien release to expire." *Id.* It alleges that Selene "threatened" the Plaintiff "with a deficiency claim of $213,900." *Id.*, at 14.

The proposed second amended complaint alleges that by May 27, 2018, the Plaintiff vacated the property in accord with the DIL. Dkt. 38-1, at 7.

The proposed second amended complaint alleges that Selene's "unreasonable inflexibility" regarding the property's value injured the Plaintiff, leaving him in "constant and prolonged limbo." Dkt. 38-1, at 8. It asserts that Selene failed to disclose appraisals and valuations from the Plaintiff and his representatives. Dkt. 38-1, at 9. The proposed second amended complaint alleges that "[d]ue to Selene's unreasonably inflated pricing of the property, Plaintiff faces a tax consequence of approximately $32,085." *Id.,* at 13. It maintains that Selene's bad faith conduct

1    – the delays, misinformation, and failures to respond unnecessarily prolonged the foreclosure

2    mediation process, prevented short-sells from being completed, and resulted large expenses for

3    the Plaintiff.  Dkt. 38-1, at 13.

4         The proposed second amended complaint asserts claims: (1) against Selene for violations

5    of RESPA, specifically 12 U.S.C. § 2605(e)(2)(A)-(C) and 12 C.R.F. § 1024.41, (2) against

6    Selene for violations of the ECOA, particularly 12 C.F.R. 1002.14(a)(1), (3) against Selene for

7    violations of the FDCPA under 15 U.S.C. § 1692e and § 1692f, (4) against Selene and MTGLQ

8    for violations of the CPA, (5) against Selene and MTGLQ for breach of contract (based on the

9    DIL) and breach of the implied duty of good faith and fair dealing, (6) against Selene and

10   MTGLQ for negligent misrepresentation, and (7) against Selene and MTGLQ for outrage.  Dkt.

11   38-1, at 29.

12        D.  **ORGANIZATION OF THIS OPINION**

13        This opinion will first address the Plaintiff's motion to strike.  It will then provide the

14   standard on a motion to amend a complaint and then the standard on a motion to dismiss under

15   Fed. R. Civ. P 12(c).  It will then analyze both the motion to dismiss and the motion to amend,

16   together, by claim.

17                          **II.**   **DISCUSSION**

18        A.  **MOTION TO STRIKE**

19        The Plaintiff moves to strike portions of the Defendants' pleadings under Fed. R. Civ. P.

20   12 (f), which provides:

21        The court may strike from a pleading an insufficient defense or any redundant,
         immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own,
22        or (2) on motion made by a party either before responding to the pleading or if a
         response is not allowed, within 21 days after being served with the pleading.
23

24

The Plaintiff moves to strike Selene's assertions that it was not liable because it was acting as an agent, that its' misrepresentations were inconsequential, and that the "argument that lawsuit was a breach of good faith." Dkt. 41.

The Plaintiff's motion to strike (Dkt. 41) should be denied. The Plaintiff's motion to strike merely raises arguments to counter the Defendants' arguments in favor of dismissal of the case. He fails to show that those arguments are unnecessarily redundant, immaterial, impertinent or scandalous. The motion should be denied.

## B. STANDARD ON THE MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Under Fed. R. Civ. P. 15 (a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A motion to amend under Rule 15 (a)(2), "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143 (9th Cir. 2011).

There is no showing here of bad faith, undue delay or undue prejudice. The Defendants argue that the motion for leave to file a second amended complaint should be denied as futile because either the claims asserted in the proposed second amended complaint fail for the same reasons asserted in the motion to dismiss or the new claims of negligent misrepresentation and outrage fail to state a claim upon which relief can be granted. Dkts. 33, 39, and 46.

## C. STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(c)

Aside from the time of filing, motions to dismiss pursuant to Rule 12(c) are "functionally identical" motions to dismiss pursuant to 12(b); "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

1    Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

2    legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri*

3    *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken

4    as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d

5    1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

6    need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

7    to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

8    a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)

9    (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above

10   the speculative level, on the assumption that all the allegations in the complaint are true (even if

11   doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough facts to state a claim to relief

12   that is plausible on its face."  *Id*. at 547.

13          Further, when ruling on a motion to dismiss, the court may "generally consider only

14   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

15   subject to judicial notice."  *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955

16   (9th Cir. 2011)(*internal citations omitted*).  Accordingly, no pleadings outside the proposed

17   second amended complaint (except attachments to the proposed second amended complaint) and

18   matters properly subject to judicial notice were considered in deciding the pending motion to

19   dismiss.

20   **D.  RESPA CLAIM ASSERTED AGAINST SELENE**

21          The Defendants' motion to dismiss Plaintiff's RESPA claim, based on 12 C.F.R. 1024.38

22   of Regulation X (Dkt. 33) should be granted.  The Plaintiff concedes that there is no private right

23   of action for that regulation.

24

The Plaintiff moves to amend his amended complaint to assert a RESPA claim against

Selene for violations of RESPA 12 U.S.C. 2605(f), which are enforceable through 12 C.F.R. §

1024.41, "Loss Mitigation Procedures." Dkt. 38. The Defendants maintain that amendment as

to this claim would be futile – they assert that the Plaintiff fails to allege any facts to support this

claim and that Plaintiff has not been damaged.

This regulation imposes duties on a loan servicer, like Selene, who receives a loss

mitigation application. 12 C.F.R. § 1024.41. For example, within 30 days of receiving the

application, the servicer must "evaluate the borrower for all loss mitigation options available to

the borrower" and "provide the borrower with a notice . . . stating the servicer's determination of

which loss mitigation options, if any, it will offer the borrower." 12 C.F.R. § 1024.41 (c)(1).

The proposed second amended complaint asserts, in part, that "Selene failed to complete a timely

review of the borrower's request for loss mitigation," and "failed to adhere to the requisite . . .

timelines in providing applicable notices." Dkt. 38-1, at 21. Further, the proposed second

amended complaint alleges that the Plaintiff was damaged as a result of the delay in resolving his

applications caused by Selene. Dkt. 38-1, at 22. The Plaintiff's motion for leave to file the

proposed second amended complaint (Dkt. 38) should be granted as to his RESPA claims based

on violations of 12 C.F.R. § 1024.41. The Plaintiff has asserted a plausible claim for relief

against Selene. To the extent that the Defendants move to dismiss the RESPA claim asserted

against Selene, based on violations of 12 C.F.R. § 1024.41 the motion (Dkt. 33) should be

denied.

### E. ECOA CLAIM ASSERTED AGAINST SELENE

Under 12 C.F.R. 1002.14(a)(1),

A creditor shall provide an applicant a copy of all appraisals and other written
valuations developed in connection with an application for credit that is to be

secured by a first lien on a dwelling. A creditor shall provide a copy of each such appraisal or other written valuation promptly upon completion, or three business days prior to consummation of the transaction (for closed-end credit) or account opening (for open-end credit), whichever is earlier.

The proposed second amended complaint alleges that Selene violated 12 C.F.R. 1002.14(a)(1) by failing to provide its appraisal of the subject property upon receipt (somewhere from around March to July 2017). Dkt. 38-1, at 23. Selene asserts that this claim should be dismissed because an application for a "short-sale" offer is not an "application for credit" under the regulation. The Plaintiff maintains that short-sales, like the one at issue here is covered by 12 C.F.R. §1002.14(a)(1) and cites to a document entitled "Equal Credit Opportunity Act . . . Valuations Rule Small Entity Compliance Guide," purportedly by the Consumer Financial Protection Bureau (Dkt. 37-3, at 1-2). Dkt. 37.

Selene's motion to dismiss the Plaintiff's claim under the ECOA, made both in the Amended Complaint and included in the proposed second amended complaint (Dkt. 33) should be granted. Under the regulation's definitions, an "application" is "an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested," and "[c]redit means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 1002.2 (j) and (f). A "short sale is the voluntary sale of mortgaged property by the borrower where the borrower secures the agreement of the lender to release the mortgage upon a bona fide sale to a third party for an agreed upon price below the mortgage loan balance." *See Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1138 (C.D. Cal. 2012)(*internal quotation marks and citations omitted*). Aside from pointing to a portion of a pamphlet, Plaintiff offers no authority or argument for his assertion that his application for a short sale was governed by 12 C.F.R. § 1002.14 as an "application for credit that is to be secured

by a first lien on a dwelling." Further, it is unclear that Selene was a "creditor" under the

regulation. The motion to dismiss the Plaintiff's ECOA claim (Dkt. 33) should be granted, and

to the extent that the Plaintiff moves for leave to include this claim in his second amended

complaint, the motion (Dkt. 38) should be denied. The ECOA claim should be dismissed.

## F. FDCPA CLAIM ASSERTED AGAINST SELENE

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt

collectors[.]" 15 U.S.C. § 1692(e). While most provisions of the FDCPA apply to activities to

collect a monetary debt, § 1692f(6) regulates actions related to enforcing security interests and so

"regulates non-judicial foreclosure activity." *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d

964, 971 (9th Cir. 2017). Section 1692f(6) prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or
> disablement of property if—(A) there is no present right to possession of the
> property claimed as collateral through an enforceable security interest; (B) there is
> no present intention to take possession of the property; or (C) the property is
> exempt by law from such dispossession or disablement.

The Defendants argue that Plaintiff's FDCPA claim should be dismissed because Selene

was not acting as debt collector and because neither Plaintiff's amended complaint nor his

proposed second amended complaint fails to identify specific communications or actions by

Selene that violated the FDCPA. Dkt. 33.

The Defendants' motion to dismiss the Plaintiff's FDCPA claim should be granted and

the claim dismissed. Plaintiff's amended complaint and proposed second amended complaint is

not the model of clarity on this claim.

To the extent that the Plaintiff bases his FDCPA claim on provisions of the FDCPA other

than §1692f, those claims should be dismissed because the Plaintiff has failed to allege that

Selene's actions were related to the collection of a money debt – all the allegations indicate that

they were in relation to Selene's attempt to enforce the security. The FDCPA regulates security

enforcement activity "only through § 1692f(6);" in the remaining provisions "'debt collection'

refers only to collection of a money debt." *Dowers,* at 970. Selene's argument that the FDCPA

does not apply to it as a servicer is without merit. The Ninth Circuit has held that FDCPA claims

under § 1692f are enforceable against a loan servicer. *Id.* The FDCPA defines "debt collector"

broadly. *See* 15 U.S.C. § 1692a(6).

To the extent that the Plaintiff makes a claim under § 1692f(6), the claim should be

dismissed. The Plaintiff has failed to allege facts that Selene, in some manner, violated §

1692f(6). There is no allegation that Selene took or threatened to take non-judicial action when

there was not right to possession of the property, there was no intention to take possession of the

property, or the property was "exempt by law from such dispossession or disablement." To the

extent that the Plaintiff moves for leave to file the proposed second amended complaint to

include this claim, it should be denied as it is currently plead.

### G. WASHINGTON'S FORECLOSURE FAIRNESS ACT AND PLAINTIFF'S STATE LAW CLAIM FOR VIOLATIONS OF CPA AGAINST MTGLQ AND SELENE

In 2011, the Washington State legislature enacted the Foreclosure Fairness Act ("FFA"),

RCW 61.24.163. *Brown v. Washington State Dep't of Commerce*, 184 Wn.2d 509, 514

(2015)(*internal citations omitted*). "Under the FFA, the Department of Commerce

("Department") administers a mediation program to encourage home loan modifications in lieu

of foreclosures. In that program, a beneficiary of a deed of trust must mediate with a residential

borrower before the borrower's home may be foreclosed." *Id.* "After the notice of default has

been issued, the FFA's foreclosure mediation program becomes available to qualified parties. To

gain access, a government-certified housing counselor or an attorney must refer the borrower to

the mediation program." *Id.,* at 516. Once "the parties are referred to mediation, the statute directs the borrower and the beneficiary to exchange certain information with each other and with the mediator." *Id.*, at 517. After the exchange of information, the mediator must send written notice to the parties that notifies the parties, that, "among other things, a person with authority to modify the loan must be present in the mediation." *Id.,* at 518. A mediator must certify the results of the mediation, and whether the parties acted in good faith. RCW 61.24.163 (10)-(12). RCW 61.24.135 (2) provides that "[i]t is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the Consumer Protection Act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163."

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.

The Defendants move to dismiss the CPA claim against Selene asserting that because Selene, as the agent of the beneficiary of the deed of trust (MTGLQ), it had no duty/obligations under the Deed of Trust Act, so the mediator's certification that Selene failed to negotiate in bad faith (and so committed a per se violation of the CPA under the relevant statutes), does not bind Selene. They argue that Selene, then did not commit an "unfair deceptive act or practice." Dkts. 33 and 39.

The Plaintiff's motion for leave to file a second amended complaint should be granted as to the addition of the CPA claim against MTGLQ and the Defendants' motion to dismiss the CPA claims asserted against Selene should be denied. Both the Amended Complaint and proposed second amended complaint assert that the mediator certified that Selene violated the duty of good faith in the mediation process, which is a per se violation of the CPA under RCW 61.24.135 (2). Selene cites no authority for its contention that it was not bound to the obligation to mediate in good faith under the FFA because it was an agent of the beneficiary. Further, the plain language of the statute provides that "[i]t is an unfair or deceptive act . . . for **any person or entity** to: (a) Violate the duty of good faith under RCW 61.24.163." RCW 61.24.135 (2)(*emphasis added*). It does not limit the requirement to the beneficiary, but contemplates the acts of "any person or entity." Even if Selene wasn't expressly covered in the statute, the allegations against Selene are sufficiently unfair or deceptive in the circumstances here. The motion to dismiss the CPA claim against Selene should be denied.

### H. STATE LAW CLAIM FOR BREACH OF CONTRACT AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING ASSERTED AGAINST MTGLQ AND SELENE

1. Breach of Contract Claims

To assert a claim for breach of contract, a plaintiff must allege the existence of a valid contract, a breach of the contract, and damages. *See Meyers v. State*, 152 Wash. App. 823, 827, 828 (2009).

As to this claim, the proposed second amended complaint refers to the "Ex. H, Ortiz Supp. Decl.," which appears to refer to an attachment to the Supplemental Declaration of Arthur Ortiz, which was attached to the Amended Complaint. Dkt. 12-6, at 3-10. Entitled "Deed-in-

Lieu of Foreclosure Agreement," it purports to be between Selene and the Plaintiff.  Dkt. 12-6, at 3.

The Defendants' motion to dismiss the breach of contract claim made against Selene should be denied. The parties do not dispute that they had a valid contract.  The parties' dispute centers on the second element, whether the Selene breached the contract.

The Defendants maintain that Selene did not breach the DIL because Selene had the express right to terminate the contract if the Plaintiff failed to act in good faith.  Dkt. 33.

They further assert that this claim should be dismissed because the Plaintiff failed to perform his obligations under the DIL when he failed to obtain a release of the IRS tax lien before the closing, which meant that he failed to clear title to the property.  *Id.*  The Defendants maintain that the "Conditional Commitment to Discharge Certain Property from Federal Tax Lien" did not satisfy his obligation to obtain a formal release before closing.  *Id.*  Defendants also assert that the Plaintiff also breached the DIL when he filed this lawsuit demanding attorney's fees when the DIL expressly provided that Selene would not pay his attorney's fees or loss mitigation fees.  *Id.*  The arguments related to the Plaintiff's failure to perform or breach of the DIL appear to be asserted as affirmative defenses to Selene's alleged breach of the contract. Selene offers no authority or evidence that these arguments are appropriately considered in this motion to dismiss the Plaintiff's Amended Complaint or in consideration of whether the Plaintiff should be permitted to file his proposed second amended complaint.  Further, while both parties point to a letter from the IRS, that letter is not attached to the Amended Complaint or proposed second amended complaint.

The proposed second amended complaint asserts that Selene breached the DIL when it improperly terminated the DIL in retaliation for the Plaintiff filing this lawsuit (not for Plaintiff

acting in bad faith) and failed to provide the title documents it agreed to provide. Dkt. 38-1. While it is abundantly clear from the pleadings that the parties do not agree on these facts, at this stage in the litigation, this allegation is sufficient to allege that Selene breached the DIL. Further, the Plaintiff alleges that he was damaged as a result of Selene's breach. Dkt. 38-1, at 27. The Defendants' motion to dismiss the breach of contract claim asserted against Selene should be denied and the Plaintiff's motion for leave to file a second amended complaint to add allegations related to this claim should be granted.

The Defendant moves for dismissal of this claim against MTGLQ for the same reasons it moves for dismissal of the claim against Selene. The breach of contract claim against Selene should not be dismissed on the grounds advanced by the Defendants; for the same reasons, it should not be dismissed against MTGLQ.

2. <u>Breach of Duty of Good Faith and Fair Dealing</u>

"Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014). Although there is a duty of good faith and fair dealing implied in all existing contracts, Washington courts "have consistently held there is no free-floating duty of good faith and fair dealing that is unattached to an existing contract. The duty exists only in relation to performance of a specific contract term." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945, 949 (2004).

The Defendants move to dismiss the Plaintiff's claim, arguing that the Plaintiff failed to point to a specific term in the DIL of any other contract that either of the Defendants failed to perform in good faith. Dkt. 33. In his proposed second amended complaint, the Plaintiff alleges

that Selene violated the "COOPERATION WITH CLOSING" clause of the DIL.  Dkt. 38-1, at

28.  That clause provides:

> 5. **COOPERATION WITH CLOSING**.
>
> 5.1 Homeowner shall promptly sign a Deed-in-Lieu of Foreclosure or similar
> document(s) provided by Selene or its authorized agents, which document(s)
> transfer title to the Property to the Lender, along with such other documents as
> may be required by Selene, including those typically signed in connection with
> completing a deed-in-lieu of foreclosure in the area where the Property is located.
> Even after you have signed these documents, the transaction will not be effective
> until it is accepted by the Lender as set forth in this Agreement.
>
> 5.2 You will be required to sign additional standard pre-closing documents, as
> well as attend a closing of the conveyance of the Property where all Homeowners
> and signers or the mortgage or deed of trust must be present.
>
> 5.3 Attorney fees, loss mitigation fees and other fees incurred by Homeowner, if
> any, will not be paid by Selene. Notwithstanding the preceding, if agreed to in
> writing by Selene, these fees may be deducted from your Relocation Assistance.

Dkt. 12-6, at 4-5.  The Plaintiff's claim should be dismissed.  The provisions in the

"COOPERATION WITH CLOSING" section of the DIL apply to the Plaintiff.  The Plaintiff has

failed to point to a specific term in the DIL or any other contract that either of the Defendants

failed to perform in good faith.  His motion for leave to file the proposed second amended

complaint as to this claim should be denied.

## I.   STATE LAW CLAIM FOR NEGLIGENT MISREPRESENTATION ASSERTED AGAINST SELENE AND MTGLQ

To prevail on such a negligent misrepresentation claim in Washington, a plaintiff must

prove, by clear, cogent, and convincing evidence that:

> (1) the defendant supplied information for the guidance of others in their business
> transactions that was false, (2) the defendant knew or should have known that the
> information was supplied to guide the plaintiff in his business transactions, (3) the
> defendant was negligent in obtaining or communicating the false information, (4)
> the plaintiff relied on the false information, (5) the plaintiff's reliance was
> reasonable, and (6) the false information proximately caused the plaintiff
> damages.

1

2 *Specialty Asphalt & Constr., LLC v. Lincoln Cty.*, 191 Wn.2d 182, 196 (2018)(*internal quotation*

3 *marks and citations omitted*).

4 The Defendants did not initially move for dismissal of this claim because it was newly

5 pled in the proposed second amended complaint. In response to the motion to amend, the

6 Defendants argue that amendment as to this claim should be denied as futile because Plaintiff has

7 failed to allege sufficient facts to satisfy each element.

8 The Plaintiff's motion for leave to file his proposed second amended complaint should be

9 granted. The proposed second amended complaint alleges that Selene supplied false information

10 that it knew was going to guide the Plaintiff in the foreclosure mediation. It alleges that in May

11 of 2017, Selene told the Plaintiff's housing counselor and the mediator that it had been trying to

12 reach the Plaintiff and his real estate agent multiple times, to schedule some sort of valuation

13 assessment, but had gotten no response. Dkt. 38-1, at 29. It maintains that, in fact, Selene had

14 not contacted the Plaintiff or his real estate agent. *Id.*

15 The proposed second amended complaint asserts that Selene was, at least, negligent in

16 communicating this false information. It maintains that the Plaintiff reasonably relied on the

17 information – he waited weeks for Selene to contact him to set up a valuation of the inside of the

18 house. The proposed second amended complaint maintains that the Plaintiff was damaged as a

19 result. The amendment should be allowed.

20 **J.  STATE LAW CLAIM FOR OUTRAGE ASSERTED AGAINST SELENE AND MTGLQ**

21 In Washington, "[t]he tort of outrage requires the proof of three elements:  (1) extreme

22 and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

23 result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).

24

Any claim for outrage "must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.,* at 196 (*internal quotations and citation omitted*). "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 113 Wash.2d 612, 630 (1989).

The Plaintiff's motion for leave to file a second amended complaint to add a claim for outrage (Dkt. 38) should be denied. Addition of this claim would be futile. The Plaintiff has failed to allege facts sufficient to find that the Defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel,* at 196.

## K. CLEAN VERSION OF SECOND AMENDED COMPLAINT

The Plaintiff's motion for leave to file his second amended complaint should be granted in part, and denied, in part as above. The Plaintiff properly filed a red-lined version of his proposed second amended complaint with his motion. The Plaintiff should be ordered to file a clean version, excluding those claims that are dismissed by this order, on or before January 23, 2019.

## III.   ORDER

It is **ORDERED** that:

- The Plaintiff's motion to strike (Dkt. 41) **IS DENIED**;

- The Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 38) **IS**:

    o    **DENIED** as to the Plaintiff's ECOA claim, the FDCPA claim, breach of

          the duty of good faith and fair dealing, and outrage claim, and

    o    **GRANTED** as to his remaining claims;

• The Plaintiff **SHALL** file a clean version of his second amended complaint,

   excluding those claims that are dismissed by this order, on or before **January 23,**

   **2019**; and

• The Defendants' Partial Motion for Dismissal (Dkt. 33) **IS**:

    o    **DENIED** as to the Plaintiff's claims for violation of the CPA, violation of

          RESPA regulations 12 C.F.R. § 1024.41, breach of contract, and negligent

          misrepresentation, and

    o    **GRANTED** as to Plaintiff's RESPA claim, based on 12 C.F.R. 1024.38 of

          Regulation X; Plaintiff's ECOA claim, Plaintiff's FDCPA claim, claim for

          breach of the duty of good faith and fair dealing, and outrage claim.

    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing *pro se* at said party's last known address.

    Dated this 15th day of January, 2019.

              ROBERT J. BRYAN
              United States District Judge