Arthur E. Ortiz, WSBA No. 26676
The Law Office of Arthur E. Ortiz
6015 California Ave. S.W., No. 203
Seattle, WA 98136
telephone:(206) 898-5704
e-mail: arthur@aeolegal.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

MARK EDWARD MINIE

       Plaintiff,

    vs.

SELENE FINANCE L.P., a foreign corporation;
and MTGLQ INVESTORS, L.P. a foreign limited
partnership.

       Defendants.

No.  18-cv-5364

SECOND AMENDED COMPLAINT
FOR DAMAGES

JURY DEMANDED

SELENE FINANCE L.P., a foreign corporation;
and MTGLQ INVESTORS, L.P., a foreign limited
partnership,

       Counterclaim-Plaintiffs and
         Third Party Plaintiffs
   vs.

MARK EDWARD MINIE

       Counterclaim-Defendant

   and

UNITED STATES OF AMERICA,

       Third Party Defendant.

**SECOND AMENDED COMPLAINT**

Page - 1

**INTRODUCTION**

This second amended complaint ("SAC") is filed pursuant the Court's order of January 15, 2019 (Dkt. No. 48) and incorporates by reference the exhibits filed along with the original complaint (Dkt. No. 1) and the first amended complaint ("FAC") (Dkt. No. 12).

Plaintiff, Mark Minie, by and through his attorney, Arthur E. Ortiz, complains as follows:

## I.   PARTIES

1.      Plaintiff, Mark Minie (*hereinafter referred to as*, "plaintiff") is and at all times pertinent to this Complaint, and at all times material to this action residing in Quilcene, Jefferson County, Washington, and his residence is the real property at issue in this action.

2.      Defendant, MTGLQ Investors, L.P., (*hereinafter* "MTGLQ") is a Delaware limited partnership, of which a 99% limited partner interest is held by Goldman Sachs Group, Inc. MTGLQ is headquartered in New York, New York, and does business in Jefferson County, Washington through its agent and co-defendant Selene Finance.

3.      Defendant, Selene Finance (*hereinafter* "Selene"), is a Delaware corporation, headquartered in Houston, Texas, and doing business in Jefferson County, Washington. Selene is the successor servicer to Nationstar effective February 21, 2017.

4.      Selene's role as servicer is defined in §1002(26) of the Dodd-Frank Act as "any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service" 12 USC §5481(26) and consumer financial law is defined as those laws enumerated by the Act. 12 USC §5481(14).

5.      Defendant Selene's role as debt collector is also defined by the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692a(6).

6.      MTGLQ is the mortgage beneficiary.

7.      At all times pertinent to this complaint, Selene acted as agent of MTGLQ. Plaintiff herein makes claims for equitable relief and damages against both named defendants, and each of them, as

**SECOND AMENDED COMPLAINT**

Page - 2

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

having caused plaintiff's damages and losses alleged herein, acting as the agents and/or principals of the other defendant and/or was acting in concert with the other. Therefore, each of defendants are jointly and severally responsible for the acts and/or omissions of the other as their conduct relates to the subject transactions hereinafter alleged.

8.     Plaintiff hereby reserves the right to amend the parties and causes of action throughout this complaint to conform to the evidence.

## II.     JURISDICTION AND VENUE

9.     This Court has original jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 which grants jurisdiction over actions presenting a federal question and 28 U.S.C. §1332 because plaintiffs and defendant are citizens of different states and the total amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     This Court has supplemental jurisdiction over plaintiff's claims arising under the laws of Washington pursuant to 28 U.S.C. §1367(a), because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events or omissions giving rise to the claims described herein occurred in the State of Washington and the subject property is situated in Jefferson County, Washington.

12.     As of this date of this complaint, there is no action of any kind, in any U.S. Bankruptcy Court, related to this plaintiff, property, and/or action.

## III.     THE FACTS

13.     In November of 2007, plaintiff refinanced the mortgage secured by his house under a deed of trust. The Declaration of Mark Edward Minie, Dkt. No. 11 at ¶4 (*hereinafter* "Minie Decl.)

14.     In 2008, plaintiff experienced employment instability and was able to keep the mortgage with with temporary employment, loan forbearance, and loan a modification. Minie Decl. ¶¶5-6.

SECOND AMENDED COMPLAINT

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

15.    Plaintiff defaulted on the mortgage loan in 2015 (Minie Decl.¶7) and engaged the services of a HUD approved Housing Counselor to assist him with resolving the mortgage default.The Declaration of Rebecca Wellnitz, Dkt. No. 3 at ¶3 (*hereinafter* "Wellnitz Decl.")

16.    Plaintiff's housing counselor referred plaintiff to foreclosure mediation and a mediation session was scheduled for a number of months out. By December 2016 it was determined plaintiff had no options to retain or keep the property. Minie Decl.¶8, Wellnitz Decl. ¶4.

17.    Around December 2016, plaintiff learned that Selene was taking over the loan servicing from Nationstar. Minie Decl. ¶10.

18.    By early 2017, plaintiff began to take steps to short-sell the property, and by April 2017 plaintiff's housing counselor submitted plaintiff's first short-sale offer with a closing date at the end of May 2018. Minie Decl. ¶12, Wellnitz Decl. ¶5.

19.    In April 2017, Selene failed to respond to plaintiff's housing counselor requests for a response to the short sale offer. Selene left plaintiff's housing counselor out of the loop, excluding plaintiff's housing counselor from necessary communication. Wellnitz Decl.¶¶9-11.

20.    Selene's delay required a postponement of the foreclosure mediation. Minie Decl. ¶13

21.    Around the same time Selene began making unreasonable demands for documents it had already received from plaintiff's housing counselor. Minie Decl. ¶14,Wellnitz Decl. ¶10.

22.    Selene inexplicably delayed the steps necessary to complete a timely short-sale.Wellnitz Decl. ¶¶6-14. For example, around May 8, 2017, plaintiff received correspondence from Selene regarding a "property inspection fee." Plaintiff's housing counselor asked Selene if the inspection fee meant it had ordered and conducted an appraisal or valuation of some kind, like a broker's price opinion, but Selene failed to respond or responded only after prolonged delay. ("BPO").Wellnitz Decl. ¶14.

23.    On May 17, 2017 the lawyer representing Selene[1], e-mailed plaintiff's housing counselor misrepresenting that Selene had reached out to plaintiff and his agent multiple times but had not

---

1          Selene was represented in foreclosure mediation by the law firm of  McCarthy Holthus.

Arthur  E. Ortiz, Attorney
6015 California Ave. S.W., No. 203
Seattle, Washington 98136
Tel 206-898-5704     arthur@aeolegal.com

gotten a response. Wellnitz Decl. ¶15. In fact, Selene had not contacted plaintiff nor his real estate

agent. The Declaration of Michael Lindekugel, Dkt. No. 4 at ¶7 (hereinafter "Lindekugel Decl.")

24.     Around May 22, 2017, Selene also represented that plaintiff's property was worth $250,000.00

with the projected net proceeds also of $250,000.00. Without more, such a proposal is impossible to

transact because it fails to take into account customary closing costs (i.e. title, escrow, recording fees,

and excise tax, commissions, etc.) Lindekugel Decl. ¶7.

25.     By June 21, 2017, neither plaintiff nor his housing counselor had heard back from Selene

about any valuation. Weeks passed without hearing anything from Selene about an appraisal,

valuation or anything that would explain the "inspection fees." Plaintiff's housing counselor again

contacted Selene's law firm requesting attention be given plaintiff's file.

26.     By late June 2017, Selene finally responded demanding $230,000, however, the

only offers plaintiff received by then were for $190,000 and $175,000. Lindekugel Decl. ¶9.

27.     The values Selene demanded were false and uninformed. An interior inspection would have

revealed to Selene the property's dilapidated condition and the need for repair and maintenance that

would have explained the lack of offers at the prices Selene insisted upon. This raised the possibility

that Selene had either not performed the interior inspection as they stated they would, or they were

simply disregarding it. Lindekugel Decl. ¶10.

28.     By July 20, 2017 plaintiff's housing counselor and the foreclosure mediator had not received a

substantive response from Selene regarding its appraisal or BPO of the subject property, or how it

arrived at its counteroffer. It was around then that plaintiff's housing counselor discovered that Selene

was contacting plaintiff directly around twice a week and completely ignoring the housing counselor

and the foreclosure mediator. On July 26, 2017, the foreclosure mediator e-mailed Selene's lawyers

demanding that they respond. Wellnitz Decl. ¶23.

29.     On August 1, 2017, the mediator certified Selene's bad faith participation in foreclosure

mediation. Dkt. No. 2-1 (Ex. A of the Decl. of Arthur Ortiz (hereinafter referred to as "Ortiz Decl.")

**SECOND AMENDED COMPLAINT**

Page - 5

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

30.     Selene continued to insist the property was valued over $400,000.00 while the market was barely offering half that much. Ortiz Decl. Ex. A, pg. 15, at fourth log entry for "7/27/17."

31.     Selene's best opportunity to avoid unnecessary foreclosure came when two interested buyers offered $175,000 and $190,000. Lindekugel Decl. ¶11. Selene undermined those opportunities by ignoring them, and not communicating directly with plaintiff's housing counselor, real estate agent, and the parties' foreclosure mediator. Wellnitz Decl. ¶23.

32.     Later in 2017, Selene again accepted a short sale approval application from plaintiff, but again denied the approval using the same unreasonable basis.

33.     Selene ignored the offers evincing market reality and refused to negotiate. The parties re-entered foreclosure mediation upon Selene's re-issuance of a notice of trustee sale.

34.     Around April 18, 2018, Selene, through a "James Schreffler, V.P.," and plaintiff executed a Deed in Lieu of Foreclosure Agreement ("DIL Agreement") requiring plaintiff to vacate the property, show clear and marketable title, and voluntarily deed the property to the Lender (MTGLQ).

35.     In order to clear title in performance of the DIL Agreement, Selene prepared an application to release an IRS tax lien from the property.[2] Selene initially completed the forms required to apply for application to the IRS federal tax lien release with irrelevant and misleading information that would have likely resulted in the IRS's denial of the federal tax lien release that would allow plaintiff to exit the property under a deed in lieu arrangement. This caused further delay and ultimately plaintiff later correctly completed the forms through his real estate agent and paid for an updated appraisal to properly complete the application for the IRS lien release.

36.     As of April 27, 2018 the IRS granted plaintiff's request for a tax lien release to last thirty days, (Ortiz Decl. Ex. B, Dkt. No. 2-2), thus fulfilling his end of the DIL Agreement executed April 18, 2018.

37.     However, the IRS lien release approval only lasted thirty days, or until May 27, 2018. Therefore, it was clear that plaintiff was required by the DIL Agreement to vacate by before May 27,

_____

[2]     The IRS has an application process for releasing the property from their lien when its interest under the federal tax lien is valueless.

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

2018. Plaintiff began making arrangements to move by reserving his next living space and engaging movers to help him vacate before May 27.

38.    At the foreclosure mediation held on May 23, 2018, just four days before expiration of the IRS lien release approval and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement because plaintiff had filed this lawsuit. Selene invoked the termination clause in the DIL Agreement falsely stating that the litigation affected title to the property or interfered with a valid transfer of clear and marketable title. This was patently false because this litigation was based on Selene's bad faith certification from the previous mediation effort in 2017 and nothing about this lawsuit affected title to the property or interfered with a valid transfer of clear and marketable title. Plaintiff was clear all along he had no intention of keeping the property. In truth, Selene's revocation is what affected title to the property by allowing the IRS lien release to expire. Now, title to the property is no longer clear or marketable, for the purposes of foreclosure alternatives, because of Selene's sudden breach of the DIL Agreement.

39.    By May 23, 2018, plaintiff had already all but vacated the property in performance of the DIL Agreement. Plaintiff had gotten rid or stored personal items like furniture to storage, and engaged movers to vacate the property. Having substantially, if not completely, performed on the DIL Agreement by May 23, 2018, plaintiff vacated the premises pursuant the DIL Agreement before May 27, 2018 while Selene failed to abide by the DIL Agreement.

40.    Selene's unreasonable inflexibility regarding the property's value did in fact injure Mr. Minie's business and property by leaving him in constant and prolonged limbo as to what steps to take for relocation, housing, and employment.

41.    Selene's DIL Agreement breach and failure to mitigate the default leaves the borrower with a credit profile in constant flux, eliminates any hope of moving forward pending resolution, and deprives the borrower the opportunity to receive relocation assistance and the real possibility of a deficiency judgment. Lowell Decl., Dkt. No. 5 at ¶10, Minie Decl. ¶¶21-22.

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

## IV.  CLAIMS

### FIRST CLAIM

**AGAINST SELENE FOR DAMAGES ARISING
FROM WASHINGTON CONSUMER PROTECTION
ACT VIOLATIONS UNDER RCW 19.86 (CPA)**

42.    Plaintiff realleges paragraphs 13 to 41 inclusive, as though fully set forth herein.

43.    Acting as alleged herein, and as agent for defendant MTGLQ, Selene violated Washington's

Consumer Protection Act (*hereinafter* "CPA") codified in RCW 19.86. Plaintiff has a private right of

action under RCW 19.86.090, and files this claim within the four-year statute of limitation under RCW

19.86.120.

44.    Plaintiff alleges the following conduct;

44.1.    Selene ignored plaintiff's housing counselor and the real estate agent's attempts to

contact them and instead called plaintiff directly, effectively removing the housing counselor and his

real estate agent from the communication loop. Minie Decl. at ¶¶14,16,  Wellnitz Decl. ¶10. This gives

the false net impression that plaintiff was uncooperative precisely when plaintiff was doing everything

reasonably expected of him to mitigate with a short sale or a deed in lieu of foreclosure.

44.2.    Selene lied to the foreclosure mediator and housing counselor stating that Selene had

reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was

Selene had not reached out, thus manipulating the foreclosure mediation and creating more delay

and lack of communication. Wellnitz Decl. ¶¶15-16, Lindekugel Decl. ¶7. Such a misrepresentation

creates the false net impression that Selene is engaging loss mitigation in good faith and falsely lends

to the impression that requests for documents are being met, progress is being made, or resolution is

imminent when it is not. Selene's failure to mediate in good faith is certified by a foreclosure mediator.

Ortiz Decl. Ex. A, (Dkt. 2-1).

44.3.    Selene refused to address issues with regard to the subject property's value, at first

withholding disclosure of its appraisal from plaintiff and his housing counselor, then relying on an

**SECOND AMENDED COMPLAINT**

Page - 8

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

erroneous valuation Lindekugel Decl. ¶¶7-10, ¶14 (Dkt. 4), Wellnitz Decl. ¶14 (Dkt. 3), Lowell Decl. ¶9 (Dkt. 5). This creates the net impression that necessary data was not available to plaintiff and his representatives when in fact it was available. The unreasonably disproportionate valuation Selene demanded for short sale approval gave the false net impression that the market could bare such pricing, however the offers actually received from the open market clearly contradicted Selene's demands showing the property was not worth half as much. Ortiz Decl. Ex. A, (Dkt. 2-1) pg. 15, at fourth log entry for "7/27/17."

44.4    Selene has the capacity to deceive the public. The fact that Selene is not exempt from Washington's foreclosure mediation program means it is the beneficiary of deeds of trust in more than two-hundred fifty (250) trustee sales of owner-occupied residential real property. RCW 61.24.166. Indeed, Selene was referred to foreclosure mediation twenty-two (22) times. Ortiz Decl. Ex. C. (Dkt. 2-3)  Washington's Department of Financial Institution's ("WADFI") Consumer Loan Annual Assessment Report shows Selene is servicing at least 643 loans in Washington amounting to a total dollar volume of $127,678,834.76.  367 of those loans are contractually delinquent 30 days or more, and 243 of those loans are in loss mitigation. Ortiz Supp. Decl. Ex. E (Dkt. No. 12-3).

44.5.   Selene's violation of its duty to mediate in good faith is certified by a foreclosure mediator. Ortiz Decl. Ex. A, (Dkt. 2-1).

45.    Plaintiff alleges his mortgage is part of a sale and is secured by his residential property thus affecting him directly. Minie Decl at ¶4 (Dkt. 11).

46.    Plaintiff alleges Selene had, and has, the capacity to injure others;

46.1    Selene has servicing locations in Houston, TX, Jacksonville, FL andHorsham, PA. As of 31 July 2016, Selene's servicing portfolio totaled 58,543 loans for an unpaid principal balance (UPB) of approximately $8.2 billion. This reflects a slight decline over the 2015 year-end servicing portfolio of 63,278 loans for a UPB of $9.3 billion. *See* https://www.moodys.com/research/

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

Moodys-upgrades-Selene-Finances-subprime-and-special-servicing-assessments-to--PR_360338.

Ortiz Decl. Ex. D (Dkt. No. 2-4).  In 2016, Selene had the capacity to injure up to 58,543 other

borrowers from servicing locations in three different states. *Id.* In the context of a home loan

mortgage serviced by an entity who services loans to thousands in multiple States, there is no

question Selene's conduct has the substantial potential for repetition and affects the public interest.

  46.2 Selene's conduct is not exclusive and impacts the public. Under RCW 19.86.093(3)

Selene had, and has, the capacity to injure others. The chart below shows Selene's potential for

repetition of its deceptive conduct in at least thirteen states in fifteen U.S. district courts.

| | U.S. Dist. Ct. | Casename Cause No. | Allegations in Complaints filed by others | Allegations in this Complaint Cause No. 18-5364 |
|---|---|---|---|---|
| 1. | AL Northern | Muldrow v Selene, 15-0401 | Selene delayed and avoided available default mitigation, Dkt.#1, pg.s 2, ¶¶15-19. | ¶¶19-22, 25 *supra*  Selene failed to respond to plaintiff's housing counselor requests for a response to the short sale offer, Selen's delay required mediation postponement, and delayed appraisal disclosure. |
| 2. | CA Northern | Masson v Selene, 12-5335 | Pltff. alleged Selene wrongfully denied loan modification just 2 days prior to foreclosure sale, leaving Pltff no time to obtain defense. Dkt.#30, pg.s 3-4, ¶¶10-11. | ¶38-39 *supra* At the foreclosure mediation held on May 23, 2018, just four days before expiration of the IRS lien approval and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement because plaintiff had filed this lawsuit. Pltff. had already substantially performed on the DIL Agreement when Selene revoked it. |
| | Central | Kamalini v Selene, 17-1041 | Alleged lengthy delay with no contact in default mitigation processing, Dkt.#1-2, pgs. 12-20. | ¶25 *supra* Neither plaintiff nor his housing counselor heard back from Selene about any valuation. Weeks passed without hearing anything from Selene about an appraisal, valuation or anything that would explain the "inspection fees." |
| | | Goldstein v Selene, 17-2734 | Selene failed to communicate with authorized third party as requested, and did not properly engage in loss mitigation. Dkt.#1-1, pg. 11, ¶¶17-18. | ¶28  *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
| | | Wolfson v Selene, 18-4436 | Deceptive practices in loss mitigation. Dkt.#1-2, pgs. 15-16. | ¶23 *supra* the lawyer representing Selene, e-mailed plaintiff's housing counselor misrepresenting that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. |
| 3. | FL Northern | Martin v Selene, 15-0017 | Selene took no action regarding exercising or enforcing its in rem rights against property for 3 years since the entry of Pltff.'s bankruptcy discharge and 4 months since the collection communications, the. Dkt. 1, pg.2,¶11. | ¶28, 25, 27, 35 *supra* The values Selene demanded were false and uninformed. An interior inspection would have revealed to Selene the property's dilapidated condition and the need for repair and maintenance that would have explained the lack of offers at the prices Selene insisted upon. This raised the possibility that Selene had either not performed the interior inspection as they stated they would, or they were simply disregarding it. |

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

| | | | | |
|---|---|---|---|---|
| | Southern | Elor v Selene, 15-61280 | Pltff. alleged Selene unresponsive to requests for information for excessive periods. Also, sent a correspondence directly to Pltff despite being aware that Pltff was represented. Dkt. # 1, pg.s 6-7 | ¶28 *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
| | | Correa v Selene, 15-62649 | Alleged that Selene lied to Pltff. about the status of his loss mitigation application. Dkt.#1-2, pg. 11. | ¶¶23, 44.2 *supra* Selene lied to the foreclosure mediator and housing counselor stating thatSelene had reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out, |
| 4. | GA Northern | Lindsey v Selene 16-3323 | Pltff. alleged Selene delayed error correction, loss mitigation. Dkt. 1-1, pg. 7-8 | ¶25 *supra* Neither plaintiff nor his housing counselor heard back from Selene about any valuation. Weeks passed without hearing anything from Selene about an appraisal, valuation or anything that would explain the "inspection fees." |
| 5. | MA | Swenson v Selene, 16-11646 | Pltff. alleged Selene's contract breach when terms of loan modification changed materially after Pltff completed conditional temporary payment plan. Dkt.#30, pg.13. | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. |
| 6. | MI Western | Gunderson v Selene, 15-0965 | Selene delayed loss mitigation under false pretenses. Dkt. 1-1, Pg.s 12-13, ¶¶40-42. | ¶¶23, 44.2 *supra* Selene lied to the mediator and housing counselor stating to ithad reached out to Pltff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out. Selene breached the DIL Agreement using a false pretext for an excuse.¶36. |
| | | Marsh v Selene, 13-0969 | Selene told Pltff it was reviewing her for a loan modification and told her it was denied after the subject property sold in foreclosure. Dkt. 1-2, pg. 5. | ¶¶23, 44.2 *supra* Selene lied to the mediator and housing counselor stating thatSelene had reached out to Pltff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out. Selene also breached the DIL Agreement using a false pretext for an excuse only four days before Pltff was scheduled to vacate the property. ¶38-39. |
| 7. | MO Eastern | Amberg v Selene, 14-2020 | Pltff. alleged Selene continued sending letters directly to Pltff knowing Pltff. was represented by an attorney. Dkt.# 1, pg.4-5, ¶¶18-20,26. | ¶28 *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
| 8. | NJ | Flores v Selene, 18-9224 | Selene refused to work-out resolution in court-ordered mediation. Pltff. alleged Selene made unreasonable requests to increase short-sale proceeds to amounts above actual appraised value of Pltff.'s home. Dkt.#1, pgs. 1-2, 6-8, 15. | ¶24 *supra*  Selene also represented that plaintiff's property was worth $250,000.00 with the projected net proceeds also of $250,000.00. Without more, such a proposal is impossible to transact because it fails to take into account customary closing costs. ¶29 *supra* On August 1, 2017, the mediator certified Selene's bad faith in foreclosure mediation. ¶30 *supra*  Selene continued to insist the property was valued over $400,000.00 while the market was barely offering half that much. |
| 9. | OR | Harris v Selene, 18-0186 | Pltff. alleged Selene misplaced loan modification applications, and denied the modification 27 days before foreclosure sale. Selene demanded and always claimed paperwork sent to it was late or never received delaying loss | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. ¶28  *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around |

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

| | | | mitigation. Dkt.#1, pgs. 8-9, Selene alleged to communicate directly at Pltff. knowing Pltff. was represented by an attorney. Dkt. #1, pg.10. | twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
|---|---|---|---|---|
| 10. | PA Eastern | Staquet v Selene, 14-4009 | Alleged Selene provided false or misleading information, failed to provide accurate or timely information. Provided false and misleading loss mitigation information. Dkt. 1, pgs. 5-6. | ¶¶23, 44.2 *supra* Selene lied to the mediator and housing counselor stating thatSelene had reached out to Pltff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out.<br>¶35 *supra* Selene initially completed the forms required to apply for application to the IRS federal tax lien release with irrelevant and misleading information that would have likely resulted in the IRS's denial of the federal tax lien release that would allow plaintiff to exit the property under a deed in lieu arrangement |
| 11. | Tx Eastern | Cuellar v Selene, 17-0729 | Alleged Selene delayed loss mitigation process with long periods of unresponsiveness. Dkt.1-4, pgs. 6-9 | ¶25 *supra* Neither plaintiff nor his housing counselor heard back from Selene about any valuation. Weeks passed without hearing anything from Selene about an appraisal, valuation or anything that would explain the "inspection fees." |
| 12. | WA Western | McGrew v Selene, 16-0334 | Pltff alleges Selene withheld responses to her requests for information. Dkt.#1-1, pg.10, ¶¶38, 40. | ¶25 *supra* Neither plaintiff nor his housing counselor heard back from Selene about any valuation. Weeks passed without hearing anything from Selene about an appraisal, valuation or anything that would explain the "inspection fees." |
| 13. | WV Southern | Waller v Selene, 17-3625 | Pltff. had an agreed loan modification with prior servicer, but when Selene took over servicing it refused to acknowledge the modification and refused future modification applications based on prior modification (the one Selene refused to honor.) | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. |

47.     Selene's unfair and deceptive conduct injuredplaintiff's business and property.

47.1     Selene's unreasonable inflexibility regarding the property's value injured plaintiff by leaving him in prolonged limbo depriving plaintiff of mitigation, relocation assistance, housing, and access to employment. Lowell Decl. ¶10, pg. 5 (Dkt. 5).

47.2     Selene's failure to mitigate left plaintiff with a credit profile in flux, eliminated hope of moving forward pending resolution, and created the real possibility of a deficiency judgment against plaintiff. Lowell Decl. ¶10 (Dkt. 5).

47.3     Selene's delay has unnecessarily prolonged the expense of circumstances that would have been avoided had Selene resolved the foreclosure sooner with a short-sale approval, or a dee-in-lieu. Plaintiff has incurred the cost of an extended commute to Seattle for the only employment

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

opportunity currently in his field at the cost of $12,487.20 in the last two years. The commute has affected his work and certainly inflated his cost of living. Minie Decl. ¶¶18-19 (Dkt. 11).

47.4    To wait out Selene's short-sale approval process, plaintiff had to make significant withdrawals from his savings and retirement accounts, estimated at $20,000. Minie Decl. ¶20.

47.4    Due to Selene's unreasonably inflated pricing of the property, plaintiff faces a tax consequence of approximately $32,085.00. Lowell Decl. ¶12, pg. 6 (Dkt. 5).

47.5    Plaintiff has incurred over $20,525.00 in non-legal consultant and expert fees attempting to resolve this matter through foreclosure mediation and otherwise.

47.6    Plaintiff has also paid $600 in foreclosure mediation fees and $700 for a full appraisal, which may likely now be obsolete due to Selene's delay and intransigence.

48.    Plaintiff would not have been injured in his business and property but for Selene's bad faith conduct.

48.1.    Had Selene properly reviewed plaintiff for all mitigation options, the injury would have been avoided. Lowell Decl. ¶9.  But for Selene's dilatory and misleading conduct plaintiff would not be incurring the additional costs and expenses described above.

48.2    In failing to mitigate, Selene unnecessarily prolonged plaintiff's cost of living circumstances.  Lowell Decl. pgs. 5-8 (Dkt. 5).

48.3    But for Selene's unreasonably inflated pricing of the property, plaintiff would not be facing a tax consequence of approximately $32,085.00. Lowell Decl. ¶12, pg. 6 (Dkt. 5).

48.4    But for Selene's delay plaintiff would not have had to make significant withdrawals from his savings and retirement accounts, estimated at $20,000. Minie Decl. ¶20, pg. 4 (Dkt. 11).

48.5    But for Selene's delay and intransigence, plaintiff would not have incurred over $20,525.00 in non-legal consultant/expert fees attempting to resolve this matter through mediation.

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

## PRAYER FOR RELIEF AS TO
## SELENE'S CPA VIOLATIONS

50.     As a result of Selene's CPA violations, plaintiff has suffered unnecessarily costly living circumstances, increased debt and loan cost, and damage to his credit.

51.     Plaintiff respectfully requests that this Court:

ORDER defendant, Selene, to pay plaintiff compensation pursuant the following.

Actual damages in the form of recovery of additional loan cost, recovery of additional commuting cost lost incentive payments, recovery of savings and retirement withdrawals, any recoupment or set-off, the capped treble damages under RCW 19.86.090 of $25,000.00, and attorney fees and cost to be determined by the court, and any other actual cost or damage incurred as a result of Selene's deceptive delay.

Defendants' delay has caused plaintiff to withdraw $20,000.00 from savings and retirement accounts he otherwise would not have withdrawn. Minie Decl. ¶20, pg. 4 (Dkt. 11). The added expense of the commute since defendants' refusal to approve a short sale or agree to a deed in lieu of a foreclosure amounts to $12,487.20. Minie Decl. ¶19, pg. 4 (Dkt. 11). Plaintiff's tax exposure due to the difference between defendants' valuation of the property and the appraisal is $32,085.00. Lowell Decl. ¶12, pg. 6, Dkt 5. Plaintiff is also threatened with a deficiency claim of $213,900. Lowell Decl. ¶12 and letter from Selene dated May 23, 2018, threatening a lawsuit. Ortiz Supp. Decl. F. Therefore plaintiff's actual damages amount to an estimated $279,172.20. Along with the capped treble damages under RCW 19.86.090 of $25,000.00, plaintiff asks for a total compensation of $304,172.20 for defendants' violation of Washington's Consumer Protection Act exclusive of attorney's fees and costs.

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

**SECOND CLAIM**

**AGAINST MTGLQ FOR DAMAGES ARISING
FROM WASHINGTON CONSUMER PROTECTION
ACT VIOLATIONS UNDER RCW 19.86 (CPA)**

52.   Plaintiff realleges paragraphs 13 to 41 inclusive, as though fully set forth herein.

53.   Acting as alleged herein, through its agent, defendant Selene, MTGLQ violated Washington's Consumer Protection Act (*hereinafter* "CPA") codified in RCW 19.86. Plaintiff has a private right of action under RCW 19.86.090, and files this claim within the four-year statute of limitation under RCW 19.86.120.

54.   Plaintiff alleges the following conduct;

54.1.   Acting through its agent Selene, MTGLQ ignored plaintiff's housing counselor and the real estate agent's attempts to contact them and instead called plaintiff directly, effectively removing the housing counselor and his real estate agent from the communication loop. Minie Decl. at ¶¶14,16, Wellnitz Decl. ¶10. This gives the false net impression that plaintiff was uncooperative precisely when plaintiff was doing everything reasonably expected of him to mitigate with a short sale or a deed in lieu of foreclosure.

54.2.   Acting through its agent Selene, MTGLQ lied to the foreclosure mediator and housing counselor stating that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out, thus manipulating foreclosure mediation and creating more delay and lack of communication. Wellnitz Decl. ¶¶15-16, Lindekugel Decl. ¶7. Such a misrepresentation creates the false net impression that Selene is engaging loss mitigation in good faith and falsely lends to the impression that requests for documents are being met, progress is being made, or resolution is imminent when it is not. Selene's failure to mediate in good faith is certified by a foreclosure mediator. Ortiz Decl. Ex. A.

54.3.   Acting through its agent Selene, MTGLQ refused to address issues with regard to the subject property's value, at first withholding disclosure of its appraisal from plaintiff and his housing

**SECOND AMENDED COMPLAINT**

Page - 15

Arthur E. Ortiz, Attorney
6015 California Ave. S.W., No. 203
Seattle, Washington 98136
Tel 206-898-5704    arthur@aeolegal.com

counselor, then relying on an erroneous valuation Lindekugel Decl. ¶¶7-10, ¶14, Wellnitz Decl. 14, Lowell Decl. ¶9. This creates the net impression that necessary data was not available to plaintiff and his representatives when in fact it was. The unreasonably disproportionate valuation demanded for short sale approval gave the false net impression that the market offered such value, however the offers received from the open market contradicted MTGLQ's indicating plaintiff's home was not worth half as much. Ortiz Decl. Ex. A, pg. 15, at fourth log entry for "7/27/17."

54.4    MTGLQ has the capacity to deceive the public. MTGLQ is not exempt from Washington's foreclosure mediation program meaning it is the beneficiary of deeds of trust in more than two-hundred fifty (250) trustee sales of residential real property. RCW 61.24.166.

54.5    MTGLQ capacity to deceive the public is significant. MTGLQ was the winning bidder of Fannie Mae's latest non-performing loan sale involving approximately 9,800 loans totaling $1.64 billion in unpaid principal balances. Ortiz Supp.Decl. G.

54.6.    MTGLQ's violation of its duty to mediate in good faith is certified by a foreclosure mediator. Ortiz Decl. Ex. A, Dkt. 2-1.

55.    Plaintiff alleges his mortgage is part of a sale and is secured by his residential property thus affecting him directly. Minie Decl at ¶4, Dkt 11.

56.    Plaintiff alleges MTGLQ had, and has, the capacity to injure others;

56.1    In the context of an investor who owns thousands of home loan mortgages in multiple States, there is no question MTGLQ's conduct has the substantial potential for repetition and affects the public interest. Ortiz Supp. Decl. Ex. G, (Dkt. 12-5).

56.2    MTGLQ's alleged conduct is not exclusive and has a public impact. Under RCW 19.86.093(3) MTGLQ had, and has, the capacity to injure others. The chart below demonstrates potential for repetition of MTGLQ's alleged conduct impacting the public in at least eight states.

| | U.S. Dist. Ct. | Casename Cause No. | Allegations in Complaints filed by others | Allegations in this Complaint (MTGLQ acting through its agent Selene.)   18-5364 |
|---|---|---|---|---|
| 1. | CA Northern | Busch v MTGLQ, | MTGLQ failed to disclose change in note holder, Dkt. 56, pg. 23 ¶105 MTGLQ breached | ¶25 *supra* Neither plaintiff nor housing counselor heard back from Selene about any valuation. Weeks |

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704   arthur@aeolegal.com

| | | 11-3192 | a loan modification agreement. Dkt. 56, pg.s 31-32. | passed without hearing from Selene about an appraisal, valuation or anything explaining the "inspection fees." ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. |
| | | Zorilla v MTGLQ, 17-3865 | Pltf.'s house sold in foreclosure prior to short sale closing. Afterward, MTGLQ took over the loan in 3/2017 and asserted Pltf.s owed a debt in excess of $427,000. Pltf. alleged being subjected to contradictory statements, demands, and assertions. Dkt. 1-1, pgs.10-15. | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. |
| 2. | CT | Jimenez v MTGLQ, 17-1438 | MTGLQ acted in bad faith (*14) when it purported to make agreed repairs that it did not make, failed to disclose material facts. Dkt. 1-1, pg.s 12-15. | ¶23, 44.2 *supra* Selene lied to the foreclosure mediator and housing counselor stating that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out. |
| 3. | FL Middle | Shevchik v MTGLQ, 17-3117 | MTGLQ acting through its debt collector agent bypassed Pltf.'s attorney knowing Pltf was represented by attorney, and having atty name and address. Dkt.1, pg. 11-12. | ¶28  *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
| 4. | HI | Valencia v MTGLQ, 11-0717 | MTGLQ offered a loan modification on condition of completing a conditional forbearance agreement. Pltff made required $10k down payment and monthly payments required per agreement. MTGLQ breached the agreement. Pltff.'s complaint alleges MTGLQ, "Deliberately acting to delay, prolong or otherwise frustrate the loan modification process, including but not limited to routinely demanding information already provided to Plaintiff, making inaccurate calculations and determinations of eligibility of Plaintiff for loan modification and implied promises." Dkt. #1-1, pg.s 9-10. | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. ¶¶28, 25, 27, 35 *supra* The values Selene demanded were false and uninformed. An interior inspection would have revealed to Selene the property's dilapidated condition and the need for repair and maintenance that would have explained the lack of offers at the prices Selene insisted upon. This raised the possibility that Selene had either not performed the interior inspection as they stated they would, or they were simply disregarding it. |
| 5. | IL Northern | Brewer v MTGLQ, 17-5014 | Through its agent MTGLQ, contacted Pltff. even though it knew that Pltff was represented by counsel with respect to the property in the underlying foreclosure matter. Dkt. 1, pg. 16 | ¶28  *supra* Pltff's housing counselor discovered Selene was contacting plaintiff directly around twice a week and completely ignoring the housing counselor and the foreclosure mediator. |
| | | Juraga v. MTGLQ, 16-4270 | After bankruptcy, Pltff.'s loan was contractually current. MTGLQ was required to honor the terms of the confirmed bankruptcy plan and all bankruptcy orders with respect to the amounts due. MTGLQ improperly assessed penalties, deemed Pltff. in default, and recorded her loan as past due. Pltff.'s oral and written requests for correction were refused. Dkt.# 1, pg.s 10-15 | ¶38 *supra* Just four days before expiration of the IRS lien release approval, and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement. |
| 6. | MA | Weiner v MTGLQ, 17-40144 | MTGLQ's agent lied to Pltff. about foreclosure sale date, offering loan modification application deadline that was beyond foreclosure sale date. Dkt.#1-1, pg.s 5-6. | ¶23, 44.2 *supra* Selene lied to the foreclosure mediator and housing counselor stating that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out. |
| 7. | NH | Bowser v MTGLQ, 15-0154 | MTGLQ and agent co-defendants alleged to have made false representations of material facts regarding default mitigation and loan servicing. Dkt.#1-1, pg.s 5-7. | ¶24 *supra* Selene also represented that plaintiff's property was worth $250,000.00 with the projected net proceeds also of $250,000.00. Without more, such a proposal is impossible to transact because it |

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

| | | | | fails to take into account customary closing costs. ¶29 *supra* On August 1, 2017, the mediator certified Selene's bad faith in foreclosure mediation. ¶30 *supra* Selene continued to insist the property was valued over $400,000.00 while the market was barely offering half that much. ¶¶23, 44.2 *supra* Selene lied to the foreclosure mediator and housing counselor stating that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. The truth was Selene had not reached out. ¶35 *supra* Selene initially completed the forms required to apply for application to the IRS federal tax lien release with irrelevant and misleading information that would have likely resulted in the IRS's denial of the federal tax lien release that would allow plaintiff to exit the property under a deed in lieu arrangement |
|---|---|---|---|---|
| 8. | TX Eastern | Jones v MTGLQ, 17-0522 | Pltff. alleged MTGLQ withheld notice of foreclosure sale and sold a house in foreclosure in defiance of a TRO. Dkt.28, pg. 2-3. | ¶25 *supra* Neither plaintiff nor his housing counselor heard back from Selene about any valuation. Weeks passed without hearing anything from Selene about an appraisal, valuation or anything that would explain the "inspection fees." |

57. Selene's unfair and deceptive conduct injured plaintiff's business and property.

57.1 Acting through its agent Selene, MTGLQ's unreasonable inflexibility regarding the property's value injured plaintiff by leaving him in prolonged limbo depriving plaintiff of mitigation, relocation assistance, housing, and access to employment. Lowell Decl. ¶10, Dkt 5.

57.2 Acting through its agent Selene, MTGLQ's failure to mitigate left plaintiff with a credit profile in flux, eliminated hope of moving forward pending resolution, and created the real possibility of a deficiency judgment against plaintiff. Lowell Decl. ¶10, Dkt 5.

57.3 Acting through its agent Selene, MTGLQ's delay has unnecessarily prolonged the expense of circumstances that would have been avoided had Selene resolved the foreclosure sooner with a short-sale approval, or a dee-in-lieu. Plaintiff has incurred the cost of an extended commute to Seattle for the only employment opportunity currently in his field at the cost of $12,487.20 in the last two years. The commute has affected his work and certainly inflated his cost of living. Minie Decl. ¶¶18-19, Dkt. 11, pg.s 3-4.

**SECOND AMENDED COMPLAINT**

Page - 18

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

57.4    To wait out the delayed short-sale approval process, plaintiff had to make significant withdrawals from his savings and retirement accounts, estimated at $20,000.Minie Decl. ¶20.

57.5    Through its agent Selene, MTGLQ's unreasonably inflated pricing of the property, forces plaintiff to face a tax consequence of approximately $32,085.00. Lowell Decl. ¶12, Dkt 5.

57.6    Plaintiff has incurred over $20,525.00 in non-legal consultant and expert fees attempting to resolve this matter through foreclosure mediation and otherwise.

57.7    Plaintiff has also paid $600 in foreclosure mediation fees and $700 for a full appraisal, which may likely now be obsolete due to Selene's delay and intransigence.

58.    Plaintiff would not have been injured in his business and property but for MTGLQ's bad faith.

58.1.    Had MTGLQ, through its agent Selene, properly reviewed plaintiff for all mitigation options, the injury would have been avoided. Lowell Decl.¶9, Dkt. 5.  But for the dilatory and misleading conduct plaintiff would not be incurring the additional costs described above.

58.2    In failing to mitigate, MTGLQ unnecessarily prolonged plaintiff's cost of living circumstances.  Lowell Decl. pgs. 5-8, Dkt. 5.

58.3    But for MTGLQ's unreasonably inflated pricing of the property, plaintiff would not be facing a tax consequence of approximately $32,085.00.Lowell Decl. ¶12, Dkt 5.

58.4    But for MTGLQ's delay plaintiff would not have had to make significant withdrawals from his savings and retirement accounts, estimated at $20,000.

58.5    But for MTGLQ's delay and intransigence, plaintiff would have incurred over $20,525.00 in non-legal consultant and expert fees attempting to resolve this matter through foreclosure mediation and otherwise.

**PRAYER FOR RELIEF AS TO
MTGLQ's CPA VIOLATIONS**

59.    As a result of MTGLQ's CPA violations, plaintiff has suffered unnecessarily costly living circumstances, increased debt and loan cost, and damage to his credit.

60.    Plaintiff respectfully requests that this Court:

**SECOND AMENDED COMPLAINT**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

ORDER defendant, MTGLQ, to pay plaintiff compensation pursuant the following.

Actual damages in the form of recovery of additional loan cost, recovery of additional commuting cost lost incentive payments, recovery of savings and retirement withdrawals, any recoupment or set-off, the capped treble damages under RCW 19.86.090 of $25,000.00, and attorney fees and cost to be determined by the court, and any other actual cost or damage incurred as a result of Selene's deceptive delay.

61.     MTGLQ's delay has caused plaintiff to withdraw $20,000.00 from savings and retirement accounts he otherwise would not have withdrawn. Minie Decl.¶20, pg. 4, Dkt 11. The added expense of the commute since defendants' refusal to approve a short sale or agree to a deed in lieu of a foreclosure amounts to $12,487.20. Minie Decl.¶19, pg. 4, Dkt 11. Plaintiff's tax exposure due to the difference between defendants' valuation of the property and the appraisal is $32,085.00. Lowell Decl. ¶12, Dkt. 5 pg.6. Plaintiff is also threatened with a deficiency claim of $213,900. Lowell Decl. ¶12 and letter from Selene dated May 23, 2018. Ortiz Supp. Decl. F.  Plaintiff's actual damages amount to an estimated $279,172.20. Along with the capped treble damages under RCW 19.86.090 of $25,000.00, plaintiff asks for total compensation of $304,172.20 for MGTLQ's violation of Washington's CPA exclusive of attorney's fees and costs to be determined at trial.

### THIRD CLAIM

### AGAINST SELENE FOR DAMAGES ARISING FROM VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) UNDER 12 U.S.C. §2605 *et seq.*

62.     Plaintiff realleges paragraphs 13 to 41 inclusive, as though fully set forth herein.

63.     Acting as alleged herein, Selene violated the Real Estate Settlement Procedures Act, (*hereinafter* "RESPA"), 12 U.S.C. §2605(e)(2)(A)-(C ) and 12 C.F.R. §1024.41 *et seq.* Plaintiff has a private right of action under §1024.41 and 12 U.S.C. §2605(f) and files this claim within the three-year statute of limitation under 12 U.S.C. §2614.

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

64.     Selene failed to access and provide plaintiff critical valuation information, specifically the Broker's Price Opinion ("BPO"), in violation of 12 C.F.R. §1024.41 (Wellnitz Decl. ¶¶14,19.) Such valuation information is necessary in facilitating other alternatives to foreclosure such as a deed-in-lieu. Plaintiff requires current valuation information in order to free title from other incumbrances for the purpose of qualifying for a deed-in-lieu. Lindekugel Decl. ¶12. Selene failed to complete a timely review of the borrower's request for loss mitigation; failed to adhere to the requisite federal and state time lines in providing applicable notices; relied on unsupported valuations in assessing one or more bone-fide purchase offers; failed to sufficiently address borrower inquiries; and with notice from their foreclosure mediator, failed to participate in the Washington State Foreclosure Mediation program in good faith. Dkt. No. 5, pg. 3¶8(a). Selene withheld its BPO for months despite numerous requests for its production. Wellnitz Decl. ¶¶20-24.

65.     Selene failed to properly evaluate loss mitigation and instead delayed with requests for postponements. Selene misrepresented to the foreclosure mediator that it communicating with plaintiff when in fact it had not in violation of 12 C.F.R. §1024.41, WA RPC 3.3, and WA RPC 4.4.

**PRAYER FOR RELIEF AS TO
SELENE'S RESPA VIOLATIONS**

66.     Plaintiff requests the court enter judgment against Selene, for actual, statutory, treble and/or punitive damages, attorney's fees and costs, and any other and further relief as the court deems just and proper pursuant 12 U.S.C. § 2605(f)(1). "Actual damages" recoverable under RESPA include compensation for both economic losses and emotional distress. *Lucero v. Cenlar FSB*, No. C13-0602 RSL, Dkt. No. 294, (U.S.D.C., W.D. Wash., January 28, 2016).

Defendants' delay has caused plaintiff to withdraw $20,000.00 from savings and retirement accounts he otherwise would not have withdrawn. Minie Decl. ¶20, pg. 4, Dkt. 11. The added expense of the commute since defendants' refusal to approve a short sale or agree to a deed in lieu of a foreclosure amounts to $12,487.20. Minie Decl. ¶19, pg. 4, Dkt. 11. Plaintiff's tax exposure due to the difference between defendants' valuation of the property and the appraisal is $32,085.00. Lowell

**SECOND AMENDED COMPLAINT**

Page - 21

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

Decl. ¶12, Dkt 5. Plaintiff is also threatened with a deficiency claim of $213,900. Lowell Decl.¶12 and Selene letter from May 23, 2018, Ex F, Ortiz Supp. Decl.  Therefore plaintiff's actual damages amount to $279,172.20, $100,000 for the emotional distress plaintiff suffered for over sixteen months of needless financial mitigation delay, and attorney's fees and costs to be determined at trial.

## FOURTH CLAIM

### AGAINST SELENE FOR DAMAGES ARISING
### FROM ITS BREACH OF CONTRACT.

67.     Plaintiff incorporates herein by reference the allegations made in paragraphs13 to 41, inclusive, as though fully set forth herein.

68.     On April 18, 2018, Selene, through a "James Schreffler, V.P.," and plaintiff, together executed a Deed in Lieu of Foreclosure Agreement ("DIL Agreement") requiring plaintiff to vacate the property, show clear and marketable title, and voluntarily deed the property to the Lender (MTGLQ). Ex. H, Ortiz Supp. Decl. (Dkt. 12-6).

69.     In order to obtain clear and marketable title, pursuant the DIL Agreement, plaintiff applied to the IRS to have the property released from a tax lien.

86.84  Plaintiff paid $700.00 for the appraisal required by the IRS as part of the application for a tax lien release.

70.     On April 27, 2018 the IRS granted plaintiff's application for a tax lien release thus meeting the DIL Agreement's requirement for clear and marketable title.

88.86  However, the IRS lien release approval lasted thirty days, or until May 27, 2018. Therefore, it was clear that plaintiff was required by the DIL Agreement to vacate by before May 27, 2018. Plaintiff began making arrangements and incurred costs vacating the property before May 27.

71.     At the foreclosure mediation held on May 23, 2018, just four days before expiration of the IRS lien release approval and thus the DIL Agreement, Selene announced it was revoking the DIL Agreement in retaliation for plaintiff filing this lawsuit.

Arthur  E. Ortiz, Attorney
6015 California Ave. S.W., No. 203
Seattle, Washington 98136
Tel 206-898-5704     arthur@aeolegal.com

72.    The DIL Agreement is a valid contract, supported by consideration and performance, between Selene, as agent for its principal, MTGLQ, and plaintiff.

73.    Selene violated the "COOPERATION WITH CLOSING" clause of the DIL Agreement by not providing the title transferring documents stated therein. Plaintiff obtained a federal tax lien release and Selene never provided the title documents it promised to provide. Selene suddenly canceled the DIL Agreement before closing but after plaintiff performed.

74.    Plaintiff performed on the DIL Agreement by obtaining a clear and marketable title, and vacating the property. Selene revoked the DIL Agreement prior to plaintiff voluntarily deeding the property to the ledner, MGTLQ.

75.    Selene, as agent for MTGLQ, breached the DIL Agreement when it revoked the agreement in foreclosure mediation on May 23, 2018. In doing so Selenebreached the implied duty of good faith that every contract imposes upon each party.

76.    Selene's breach of the DIL Agreement damaged plaintiff in an amount to be proven at trial.In addition to damages, plaintiff is entitled todeclaratory relief in the form of an adjudication establishing the DIL Agreement as an enforceable and legally binding contract between the parties.

**FIFTH CLAIM**

**AGAINST MTGLQ FOR DAMAGES ARISING
FROM ITS BREACH OF CONTRACT.**

77.    Plaintiff incorporates herein by reference the allegations made in paragraphs13 to 41, inclusive, as though fully set forth herein.

78.    On April 18, 2018, MTGLQ, through its agent, Selene, and plaintiff, executed a Deed in Lieu of Foreclosure Agreement ("DIL Agreement") requiring plaintiff to vacate the property, show clear and marketable title, and voluntarily deed the property to the Lender (MTGLQ). Ex. H, Ortiz Supp. Decl. (Dkt. 12-6). In order to obtain clear and marketable title, pursuant the DIL Agreement, plaintiff applied to the IRS to have the property released from a tax lien.

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

79.     Plaintiff paid $700.00 for the appraisal required by the IRS as part of the application for a tax lien release.

80.     On April 27, 2018 the IRS granted plaintiff's application for a tax lien release thus meeting the DIL Agreement's requirement for clear and marketable title.

81.     However, the IRS lien release approval lasted thirty days, or until May 27, 2018. Therefore, it was clear that plaintiff was required by the DIL Agreement to vacate by before May 27, 2018. Plaintiff began making arrangements and incurred costs vacating the property before May 27.

82.     At the foreclosure mediation held on May 23, 2018, just four days before expiration of the IRS lien release approval and thus the DIL Agreement, MTGLQ, by its agent, Selene, announced it was revoking the DIL Agreement in retaliation for plaintiff filing a lawsuit.

83.     The DIL Agreement is a valid contract, supported by consideration and performance, between Selene, as agent for principal, MTGLQ, and plaintiff.

84.     Plaintiff performed on the DIL Agreement by obtaining a clear and marketable title.

85.     MTGLQ through Selene as its agent breached the DIL Agreement when it revoked the agreement in foreclosure mediation on May 23, 2018. In doing so MTGLQbreached the implied duty of good faith that every contract imposes upon each party.

86.     Selene violated the "COOPERATION WITH CLOSING" clause of the DIL Agreement by not providing the title transferring documents stated therein. Plaintiff obtained the federal tax lien release and Selene never provided the title documents the DIL Agreement stated Selene promised to provide. Selene canceled the DIL Agreement before closing but after plaintiff performed.

87.     Selene's breach of the DIL Agreement damaged plaintiff in an amount to be proven at trial.In addition to damages, plaintiff is entitled todeclaratory relief in the form of an adjudication establishing the DIL Agreement as an enforceable and legally binding contract between the parties.

**SECOND AMENDED COMPLAINT**

Page - 24

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**SIXTH CLAIM**

**AGAINST MTGLQ AND SELENE, JOINTLY &
SEVERALLY, FOR DAMAGES ARISING FROM
NEGLIGENT MISREPRESENTATION.**

88.    Plaintiff incorporates herein by reference the allegations made in paragraphs13 to 41,

inclusive, as though fully set forth herein inclusive, of the statement of The Facts.

89.    Selene negligently represented the following:

89.1.    Around May 17, 2017, while in foreclosure mediation under RCW 61.24.163,Selene's

legal counsel misrepresented to plaintiff's housing counselor and foreclosure mediator thatSelene

had reached out to plaintiff and realtor (Mr. Lindekugel) multiple timesbut had not gotten a response.

The truth was no such contact was made and both plaintiff and Mr. Lindekugel denied receiving any

contact from defendants prior to Selene's misrepresentation. Dkt. No. 3, pg. 4,¶15, Dkt. No. 4, pg. 2,

¶7, Dkt. No. 2-1, pg. 10 (see entries for 5/17/17 and 5/18/17);

89.2.    Around May 22, 2017, Selene's legal counsel unrealistically represented that the

subject property was worth $250,000.00 with projected net proceeds also of $250,000.00. Such a

transaction is impossible because it fails to take into account customary closing costs (i.e. title,

escrow, recording fees, and excise tax, commissions, etc.); Dkt. No. 4, pg. 2, ¶7.

89.3.    Prior to April 18, 2018, Selene's legal counsel offered to, and completed, an application

for a federal tax lien release to the IRS for plaintiff to send to the IRS. The application was completed

with irrelevant and misleading entries. Dkt. No. 12, pg. 6, ¶35.

89.4.    Around April 18, 2018 Selene represented that it, or its authorized agents would

provide the documents necessary to transfer title, "including those typically signed in connection with

completing a deed-in-lieu of foreclosure ...." Dkt. No. 12-6 (DIL Ag., pg. 5,¶5 ("COOPERATION WITH

CLOSING")). Selene's representation was negligent because it subsequently failed to provide

documents to transfer title or typically signed in connection with completing a deed-in-lieu of

foreclosure. At considerable expense plaintiff obtained a full appraisal and a federal tax lien release in

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

performance of the signed DIL Agreement only to never be provided the documents referred to in the DIL Agreement's "Cooperation With Closing" clause transferring title to MTGLQ.

89.5.   On November 11, 2018, Selene legal counsel misrepresented to the court that plaintiff's counsel instructed a third party subpoenaed witness to not to produce the documents requested. The representation that plaintiff's counsel instructed the witness to not produce requested documents was false and  categorically denied by the witness prported to have made the statement. Dkt. 34, pg 2,  Dkt. No. 36, pgs. 3-4, ¶2, Dkt. No. 36-1, pgs. 3-4, ¶7-8

90.   Under the circumstances alleged, defendants owed plaintiff a duty to provide him with accurate information regarding the alternatives to foreclosure, in particular what was required for a deed in lieu of foreclosure. Selene owed plaintiff a duty to comply with the representations made by Selene in its "DEED-IN-LIEU OF FORECLOSURE AGREEMENT" (DIL Agreement). Dkt. 12-6.

91.   Supplying such obviously false information as what the property was worth demonstrates a lack of exercise of reasonable care or competence in communicating accurately.

92.   Plaintiff justifiably relied on Selene's misrepresentations, expecting to convey title to MTGLQ and be free of the deed of trust.

93.   Plaintiff has suffered significant damages as a result of Selene's negligent misrepresentation evading the resolution to his loan default.

94.   The Plaintiff is entitled to compensatory damages, and attorney's fees and costs expended in reliance upon Selene's negligent misrepresentations.

### V.      RELIEF

95.   Plaintiff demands relief as follows:

95.1   Judgment against Selene and MTGLQ for the damages described in the complaint and for all actual damages, including recovery for injury to business or property, available under RCW 19.86 et seq., including treble damages, attorneys fees and costs, and the increased cost of plaintiff's mortgage loan;

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

95.2    A comprehensive award for the value of lost use of plaintiff's monies, past and future, according to proof at time of trial;

95.3    An award of actual and punitive damages along with costs of this action and reasonable attorneys' fees under 15 U.S.C. § 1681n.  and15 U.S.C. §1691e(a)-(d).

95.4    An award of actual and punitive damages along with costs of this action and reasonable attorneys' fees under 12 U.S.C. § 2605(f)(1);

95.5    An award of actual damages, additional statutory damages of $1,000.00, and attorney's fees and costs under 15 U.S.C. §1692k.

95.6    An award representing the benefit of the DIL Agreement, or damages representing the effect of the foreclosure sale on plaintiff's credit profile.

95.5    An award to plaintiffs for prejudgment interest as available by law;

95.6    An award of damages for emotional distress against Selene.

95.7    Such other relief as this Court deems just and equitable.


Dated this 22nd day of January, 2019.

_____
Arthur E. Ortiz, WSBA No. 26676
Attorney for Plaintiff

**SECOND AMENDED COMPLAINT**

Page - 27

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com