Arthur E. Ortiz, WSBA No. 26676
The Law Office of Arthur E. Ortiz
6015 California Ave. S.W., No. 203
Seattle, WA 98136
telephone: (206) 898-5704
e-mail: arthur@aeolegal.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK EDWARD MINIE

    Plaintiff,

    vs.

SELENE FINANCE L.P., a foreign corporation;
and MTGLQ INVESTORS, L.P. a foreign limited
partnership.

    Defendants.

SELENE FINANCE L.P., a foreign corporation;
and MTGLQ INVESTORS, L.P. a foreign limited
partnership,

    Counterclaim-Plaintiffs and
        Third Party Plaintiffs

    vs.

MARK EDWARD MINIE

    Counterclaim-Defendant

    and

UNITED STATES OF AMERICA,

    Third Party Defendant.

No.  18-cv-5364

PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

NOTE FOR MOTION CALENDAR:

March 8, 2019

# I.    INTRODUCTION

The "heart" of plaintiff's complaint is far more than just its refusal to approve a market value offer of sale, it also encompasses its costly delay, its misleading misrepresentations, and its evasion of regulatory mitigation. These tactics, as employed by Selene, unecessarily inflated the unpaid principal balance making it more difficult for the fair market value to meet or come close to Selene's unrealistic demanded price. Plaintiff requests denial of the summary judgment motion in its entirety.

# II.    FACTS

Plaintiff incorporates the facts alleged in his Second Amended Complaint, Dkt. 49, Dkt. No. 49, ¶¶1-41, and submits a brief fact summary here. Plaintiff alleged he complied with the Deed In Lieu of Foreclosure Agreement ("DIL Agreement" or "Agreement"). The foreclosure mediation was supposed to provide an opportunity to finalize the DIL Agreement. Plaintiff obtained the federal tax lien release as required, and defendants canceled the Agreement at mediation on May 23, 2018.

Plaintiff believed that foreclosure mediation could provide the parties an efficient and inexpensive process by which to resolve his mortgage default under Washington's Deeds of Trusts Act ("DTA") and in particular RCW 61.23.163, the Foreclosure Fairness Act, ("FFA"). Plaintiff paid for and requested FFA mediation a second time precisely in an attempt to avoid protracted disposition of the property.[1] Instead plaintiff has had to navigate defendants' reckless, wildly unreasonable, and inexplicable conduct. Plaintiff's attempts to resolve his mortgage default short of foreclosure are textbook examples of good faith; he engaged a HUD approved housing counseling agency, and was timely referred to foreclosure mediation by February 1, 2017, he engaged a professional real estate agent to assist with the short sale effort (which resulted in two buyer's offers), Dkt. No. 3, ¶5, Dkt. No. 4, pg.s 1-2, ¶¶3-5, Dkt. No. 11, ¶12, he obtained a federal tax lien release to comply with the DIL Agreement, Dkt. No. 2-2, and, as alleged, defendants thwarted every effort. *See* Dkt. No. 3, pg. 2-3, ¶9-11 ("Selene failed to respond to plaintiff's

---

[1]    DTA's purpose is to provide a process that (1) is efficient and inexpensive, (2) provides an adequate opportunity for interested parties to prevent wrongful foreclosure, and (3) promotes stability of land titles." *Bain v. Metro. Mortg. Grp., Inc.,*175 Wn.2d 83, 93, 285 P.3d 34 (2012).

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

housing counselor requests for a response to the short sale offer. Selene left plaintiff's housing counselor out of the loop, excluding plaintiff's housing counselor from necessary communication[.]"), Dkt. No. 3, pg. 2, ¶10("Selene began making unreasonable demands for documents it had already received from plaintiff's housing counselor[.]"), Dkt. No. 3, pg. 2, ¶6-14 and See Dkt. No. 3, pg. 4, ¶15 (the lawyer representing Selene, e-mailed plaintiff's housing counselor misrepresenting that Selene had reached out to plaintiff and his agent multiple times but had not gotten a response. In fact, Selene had not contacted plaintiff nor his real estate agent." Dkt. No. 4,¶7.

### III.    EVIDENCE RELIED UPON

1.    The Court's records and the files therein.

### IV.    ARGUMENT

### STANDARD FOR SUMMARY JUDGMENT

The moving party has the initial burden to show that there is no genuine disputed issue of material fact. FRCP 56(c). That burden can be met in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276 (D.Nev. 2010) *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53. If the moving party fails to meet its initial burden, summary judgment must be denied. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586,106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987). At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* At 255, 106 S.Ct. 2505. If the nonmoving party's evidence is probative, summary judgment should be denied. *See id.* at 249-50,106 S.Ct. 2505.

**A.     There is a Triable Issue of Fact As To Defendants' Purported Damages.**

Defendants' motion conspicuously ignores their failure to mitigate. In effect defendants ask the court to blindly adopt amounts in dispute simply because there is no dispute over the execution of note and deed of trust, and default. There is sufficient dispute over the what comprises the unpaid principle balance to deny defendant's motion. The bad faith mediation certificate, Dkt. No. 2-1, the housing counselor's testimony at Dkt No. 3, plaintiff's testimony at Dkt. No. 11, and the real estate agents testimony at Dkt. No. 4. all point to a delay that created arrears that would not be there but for defendants' concerted delay. Amounts defendants demand are artificially inflated by defendants' delay.

The question of whether a party acted reasonably to mitigate its damages is a question of fact, *Tynan Incinerator Co., Inc. v International Fidelity Insurance Co.*, 117 A.D.2d 796, 797 2d Dept. 1986), and is based on a determination of the parties' credibility, among other factors. A breaching party may establish not only that the plaintiff failed to make diligent efforts to mitigate damages but also the extent to which such efforts would have diminished damages. *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 846 N.Y.S.2d 95, 99 (App. Div. 2007). To the extent that through its own delay a party aggravates its injuries the recovery should be reduced accordingly. *Trust for the Certificate Holders of the Merrill Lynch Mortgage Pass-Through Certificates Series 1999-CI v. Love Funding Corp., No. 4 Civ. 9890(SAS), 2005 WL 2582177, at *7 n.84 (S.D.N.Y. Oct 11, 2005).*

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

Defendants' right of recovery is subject to reduction insofar proven (1) that it failed to make reasonably diligent efforts to mitigate damages and (2) the extent to which such efforts would have diminished the loss (*see Wilmot v. State of New York*, 32 N.Y.2d 164, 168-169, 344 N.Y.S.2d 350, 297 N.E.2d 90 [1973]; *Eskenazi v. Mackoul*, 72 A.D.3d 1012, 1014, 905 N.Y.S.2d 169 [2010]; *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 47 A.D.3d 103, 107, 846 N.Y.S.2d 95 [2007]; *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 170 A.D.2d 108, 115, 573 N.Y.S.2d 981 [1991], affd. on other grounds 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 [1992], *quoting Den Norske Ameriekalinje Actiesselskabet v. Sun Print. & Publ. Assn.*, 226 N.Y. 1, 7, 122 N.E. 463 [1919]).

A foreclosure mediator certified defendants' bad faith on August 15, 2017, citing unresponsiveness and delay. Dkt. No. 2-1. Had defendants not squandered the numerous opportunities to mitigate plaintiff's default the arrears (amount due) would not be $85,879.27. Exhibit A, Plaintiff's monthly mortgage statement of February 20, 2019. Because defendants failed to mitigate in good faith the amount due is in dispute. Just prior to when defendants took over the roles of beneficiary and loan servicer, plaintiff's principal balance was $427,006.63. Ex. B, Detailed Transaction History, Ex. A. By February 13, 2018 defendants were demanding an increased principal balance of $494,330.89. Exhibit C, pay-off quote of February 2018. Plaintiff's latest mortgage statement shows "Advances/Fees Charges" at $6,059.75, however, the escrow, and corporate advances along with late fees stated in defendants' proposed judgment summary adds up to $22,950.09. Ex. A, statements for 1/21/18-2/20/19. Now defendant demands a total pay-off of $548,029.60 making the asked for judgment greater than any appraisal to date. A judgment of such amount would render plaintiff insolvent.

Not only is what comprises the "amounts due" still in question, but so is the value of the property secured by the deed of trust. Valuations were ordered and there is evidence that the valuations are inaccurate and not taking into account an accurate assessment of the property's condition. Exhibit D, Expert report, pgs. 15-18. Conflicting expert affidavits raise issues of fact and credibility that cannot be

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

resolved on a motion for summary judgment. *Bradley v Soundview Healthcenter*, 4 A.D.3d 194 (1st Dept. 2004).

The question of damages is generally reserved for the jury. *Cairns v. GMAC Mortg. Corp.*, No. CIV 04-1840-PHX-SMM, 2007 WL 735564, *7 (D.Ariz. Mar. 5, 2007), *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F.Supp.2d 1066 (D.Or. 2011). Evidence showing that the movant's acts were a "substantial factor" in the harm or adverse action, creates an issue of fact as to causation. *Bradshaw, LP*, 816 F.Supp.2d 1066 (D.Or. 2011)(alleged inaccurate entry was a " substantial factor" in the denial of credit, adverse credit.) citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 968-69 (3d Cir.1996).

1.  Decree of Foreclosure

Defendants' authority to foreclosure on the mortgage is not in dispute. There is no dispute that plaintiff signed the note and deed of trust, and plaintiff defaulted on the loan. However, disputes of fact remain as to what the amount is due on the loan.

**B.  CPA CLAIM**

Generally, to prevail in a private Consumer Protection Act ("CPA") claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables. Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

**1.  Defendants' Conduct Was Unfair or Deceptive and Occurred in Trade or Commerce.**

**a.  Plaintiff sufficiently shows the occurrence of an unfair or deceptive practice occurring in trade or commerce.**

RCW 61.24.135(2) states,

> It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163;….

RCW 61.24.135(2). The foreclosure mediator certified defendants' violation of their duty of good faith under RCW 61.24.163 on August 15, 2017. Dkt. No. 2-1. Therefore, plaintiff makes a showing sufficient

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

to establish the first two elements of his CPA claim. See *Johnson v. JP Morgan Chase Bank, N.A.*, 14-5607-RJB, Dkt. No. 84, pg. 17 (W.D. Washington, Aug. 11, 2015)("[T]he Washington legislature has determined that a bad faith certificate in a mediation establishes the first two elements of a Consumer Protection Act claim.") To be sure, the CPA broadly defined the terms "trade" and "commerce" to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). There is no dispute that the mortgage is part of a sale and finance secured by plaintiff's residential property thereby affecting him.

> **b.    Defendants fail to negate the fact that their conduct was unfair or deceptive.**

Defendants argument that the mediator's certification is invalid because a mediation session did not occur is an attempt to rewrite Washington's Legislation. First, foreclosure mediators certify the parties' *referral* to foreclosure mediation, not individual sessions.[2] Instead of certifying each session when parties conduct multiple sessions, the mediator issues the certificate (or report) at the closing of the referral to foreclosure mediation, after the last session.

Second, the foreclosure mediator in this instance had both the discretion and authority to certify Selene's participation exactly as she did. Under RCW 61.24.163(10) a foreclosure mediator may certify a violation of the duty of good faith for failure to timely participate in mediation without good cause and for failure of the beneficiary to provide the documentation required before mediation or pursuant to the mediator's instructions. This is precisely what the mediator indicated in her statement attached to her foreclosure certification,

> After careful review of the file for this case, I have concluded that the beneficiary's lack of responsiveness and active participants in the pre-session process and at the borrower's request am closing and certifying this case with a finding that the beneficiary lacked good faith.

---

[2]    The Certificate's format also belies the intent to certify referrals comprised of up to three mediation sessions. See Dkt. No. 2-1, pg. 1.

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

Dkt. No. 2-1, pg. 3. Selene had failed to explain its short sale denial in sufficient detail for a reasonable person to understand why the decision was made, Dkt. No. 4, ¶¶7-15, and Selene failed to timely provide appraisal or other broker price opinion most recently relied upon by the beneficiary not more than ninety days old at the time of the scheduled mediation in violation of RCW 61.24.163(5)(h) and (I). Dkt. No. 3, ¶¶11-24. RCW 61.24.163(6) gives a mediator seventy days to convene a session and defendants had delayed and rescheduled mediation sessions for well over seventy days. Selene evaded the statute's "in person" requirement under RCW 61.24.163(8)(a) by delaying communication and causing the foreclosure mediation participants to reschedule mediation. Ex. E, pg. 11, housing counselor record. ("We've had a history of issues with the past Attorney assigned to this case so I am requesting your firm to follow up/respond to my future e-mails ....") and Ex F, pg. 3 ("McCarthy Holthus team, communication from your end continues to be lacking....") Nothing in the statute requires the foreclosure mediator to tolerate such abusive delay and disregard. Moreover, mediation session or not, defendants' unresponsiveness violated RCW 61.24.163(9) which states,

> The participants in mediation **must address** the issues of foreclosure that may enable the borrower and the beneficiary to reach a resolution, …

RCW 61.24.163(9) *emphasis added.* While in foreclosure mediation, defendants failed to meaningfully address the issues pertinent to reaching a resolution. Selene's counsel refused to contact plaintiff's housing counselor, Dkt. No. 3, ¶14, ¶23, and Dkt. No. 11, ¶16, then, when requested by the foreclosure mediator for an update on communication between the parties, defendants lied to the foreclosure mediator thereby assuring that the debt incurs further avoidable delay thus increasing arrears over time. Dkt. No. 4, ¶7. Selene lied to the foreclosure mediator and housing counselor stating that it had reached out to plaintiff and his agent multiple times but had not gotten a response. *Id.*, Dkt. No. 12, pg. 8-9, ¶44.2. The truth was Selene had not reached out, thus manipulating the mediator into a postponement and creating more delay and lack of communication. Ex. G, pgs. 6, 8, Dkt. No. 4, pg. 2, ¶7, Dkt. No. 12, pg. 8-9, ¶44.2.

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

Selene now represents that it called and left voicemails with real estate agent Loreen Tracy on May 3, 2017 and May 9, 2017. Even if true, those calls do not alter the fact that Selene evaded making contact with anyone involved in the foreclosure mediation effort, including plaintiff's housing counselor and real estate agent Michael Lindekugel. Ms. Tracey had nothing to do with resolving this default in mediation and Selene neglected to mention Ms. Tracey specifically until now, nearly two years after the foreclosure mediator requested it.

The record in foreclosure mediation goes beyond the "poor communication" referred to in *Patrick v. Wells Fargo Bank, NA ,* 196 Wn. App. 3 98, 410 (2016)(the foreclosure mediator in *Patrick* certified the beneficiary's participation in foreclosure mediation in "good faith," therefore *Patrick* has no useful authority here.) Selene's reasons for declining the short sale offers were illogical, at one point Selene made the impossible demand of $250,000.00 with the projected net proceeds also of $250,000.00. Without more, such a proposal is impossible to transact because it fails to take into account customary closing costs (i.e. title, escrow, recording fees, and excise tax, commissions, etc.) Dkt. No. 4, pg. 2, ¶7. Selene's lament that its liability risk does not reflect that of a housing counselor is revealing. Housing counselors have a duty to attempt resolution in good faith under RCW 61.24.160 and defendants fail to present any showing that plaintiff's housing counselor(s) violated such a duty. The record indicates MTGLQ appointed Selene as its Attorney-in-Fact and loan servicer, then had Selene act as its agent, through counsel, in foreclosure mediation. Ex. H. To argue that, like a housing counselor, Selene was neither "borrower" nor "beneficiary" under RCW 61.24.163, is an admission to lacking the adequate authority to fully settle, compromise, or otherwise reach resolution, which is yet another basis for a bad faith finding under RCW 61.24.163(10)(c), and for invoking RCW 61.24.135(2) regardless of whether a session was ever held.[3]

---

[3]     Selene was MTGLQ's "Attorney-in-Fact." Ex H. It cannot disavow the authority it exercised in non-judicial foreclosure and mediation. Ex.D-17. If so, Courts may risk losing the impetus for routinely rejecting "show-me-the-note" claims. *See Meinhart v. CMG Mortgage Inc.*, C16-5665-RBL (W.D. Wash., Nov. 3, 2016) citing *Mikhay v. Bank of Am., NA.,* 2011 WL 167064, *2-*3 (W.D. Wash. 2011); *Wright v. Accredited Home Lenders*, 2011 WL 39027 (W.D. Wash. 2011); *Pelzel v. First Saving Bank Northwest,* 2010 WL

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

### c. Determining whether an unfair act has the capacity to deceive requires a jury.

Whether an unfair act has the capacity to deceive a substantial portion of the public is a question of fact. *Walker v. Quality Loan Service Corp of Wash.*, 176 Wn.App. 294, 318, 308 P.3d 716, 727 (Wn. App., Div. 1, 2013) citing *Holiday Resort Cmtv. Ass'n v. Echo Lake Assocs.. LLC.* 134 Wn. App. 210, 226, 135 P.3d 499 (2006). Plaintiff needs only show that defendants' loan default mitigation evasion, "had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009).

Washington's Department of Financial Institution's ("WADFI") Consumer Loan Annual Assessment Report shows Selene is servicing at least 643 loans in Washington amounting to a total dollar volume of $127,678,834.76. Three hundred and sixty-seven of those loans are contractually delinquent 30 days or more, and 243 of those loans are in loss mitigation. Dkt. No. 12-3. From 2011 to 2016 Washington's Department of Commerce handled twenty-two referrals to foreclosure mediation. Dkt. No. 2-3. Selene has servicing locations in Houston, tx, Jacksonville, FL and Horsham, PA. As of July 2016, Selene's servicing portfolio totaled 58,543 loans for an unpaid principal balance (UPB) of approximately $8.2 billion. This reflects a slight decline over the 2015 year-end servicing portfolio of 63,278 loans for a UPB of $9.3 billion. *See* https://www.moodys.com/research/Moodys-upgrades-Selene-Finances-subprime-and-special-servicing-assessments-to--PR_360338. Dkt. No. 2-4. In 2016, Selene had the capacity to injure up to 58,543 other borrowers from servicing locations in three different states. *Id.* In the context of a home loan mortgage serviced by an entity who services loans to

3814285, at *2 (W.D. Wash. 2010); *Wallis v. IndyMac Fed. Bank*, 717 F.Supp.2d 1195, 1200 (W.D. Wash. 2010); and *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276, at *6 (W.D. Wash. 2010). There is no mortgage servicer exception to the duty of good faith under RCW 61.24.163 therefore no exception should be granted.

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

thousands in multiple States, a jury can find that Selene has a significant capacity to unfairly delay

mitigation and deceptively increasing arrears to tens of thousands of mortgage loans..

All told, plaintiff has sufficiently established the first two of the five *Hangman Ridge* elements of

his CPA claim. Here again, defendants argue that Selene should not be part of the foreclosure

mediator's bad faith certification, despite the Court previous ruling that, the plain language of the

statute provides that "[i]t is an unfair or deceptive act . . . for any person or entity to: (a) Violate the duty

of good faith under RCW 61.24.163." RCW 61.24.135(2). Dkt. 48, pg. 16.

**2.   Defendants' Unfair and Deceptive Conduct Affected The Public Interest.**

    **a.     <u>Plaintiff sufficiently shows defendants' conduct affects the public interest</u>.**

RCW 19.86.093 states,

> In a private action in which an unfair or deceptive act or practice is alleged under RCW
> 19.86.020, a claimant may establish that the act or practice is injurious to the public
> interest because it:
>
> (1) Violates a statute that incorporates this chapter;
>
> (2) Violates a statute that contains a specific legislative declaration of public interest
> impact; or
>
> (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the
> capacity to injure other persons.

        **(i).     Defendants' delay and misrepresentations violates RCW 61.24.163
        and is incorporated into RCW 19.83 through RCW 61.24.135.**

The foreclosure mediator certified defendants participation in bad faith. Dkt. No. 2-1. That

certification triggered the incorporation of the CPA through RCW 61.24.135(2). *See quote supra*.

        **(ii).     Defendants' delay and misrepresentations violates
        Washington's Deeds of Trusts Act which contains a
        specific legislative declaration of public interest impact.**

The three main policies of the Washington's Deeds of Trusts Act ("DTA") are: (1) the nonjudicial

foreclosure process should remain efficient and inexpensive, (2) the process should provide an

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

adequate opportunity for interested parties to prevent wrongful foreclosure, and (3) the process should promote the stability of land titles. *Bain v. Metro. Mortg.* Grp., Inc.,175 Wn.2d 83, 93, 285 P.3d 34 (2012). To further those policies Washington's Legislature amended the DTA in 2011 with the Foreclosure Fairness Act ("FFA") declaring it an act relating to "protecting and assisting homeowners from unnecessary foreclosure…." 2011 SHB 1363, Chpt. 58, 62nd Legis. Washington's Legislature declared that prolonged foreclosures contribute to the decline in the state's housing market, loss of property values, and other loss of revenue to the state and it enacted procedures to help encourage and strengthen the communication between homeowners and lenders and to assist homeowners in navigating through the foreclosure process. RCW 61.24.005 Findings-Intent—2011c58(1). The Legislature further declared it intends to,

> (a) Encourage homeowners to utilize the skills and professional judgment of housing counselors as early as possible in the foreclosure process;

> (b) Create a framework for homeowners and beneficiaries to communicate with each other to reach a resolution and avoid foreclosure whenever possible; and

> (c) Provide a process for foreclosure mediation when a housing counselor or attorney determines that mediation is appropriate. For mediation to be effective, the parties should attend the mediation (in person, telephonically, through an agent, or otherwise), provide the necessary documentation in a timely manner, willingly share information, actively present, discuss, and explore options to avoid foreclosure, negotiate willingly and cooperatively, maintain a professional and cooperative demeanor, cooperate with the mediator, and keep any agreements made in mediation."

RCW 61.24.005 Findings-Intent—2011c58 (2). Defendants' conduct summarily thwarted and undermined the legislature's intent. Selene's refusal to directly communicate with plaintiff's housing counselor and real estate agent, Mr. Lindekugel, thwarted the Legislature's wish that parties willingly share information, actively present, discuss, and explore options to avoid foreclosure. Selene withheld the June 9, 2017 valuation in contravention of the legislative intent that the parties share information and maintain a professional and cooperative demeanor. Ex.I. When Selene lied to the mediator about reaching out to plaintiff and his representatives it undermined the legislative intent that the parties cooperate with the

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

mediator. Dkt. No. 4 ¶7. In sum, defendants made the nonjudicial foreclosure process less efficient and more expensive, promoted financial hardship, and prevented a stable non-litigated transfer of title.

### (iii). Defendants' delay and misrepresentations have the capacity to injure other persons.

Noted *supra*, defendants have the capacity to injure others. Plaintiff shows evidence that Selene's servicing portfolio involves tens of thousands of loans totaling an aggregate unpaid principal balance (UPB) in the billions of dollars. See Dkt. No.s 2-3, 2-4.

### b. Defendants fail to negate the fact that its conduct affects the public interest.

Defendants cannot refute their affect on the public interest nor did they try. Not only is there ample evidence of defendants' far reaching portfolios of mortgage loans but there is also growing evidence that Selene is injuring others. Selene's conduct has inspired a number online review services with websites where victims can post complaints regarding Selene. A non-exhaustive list of the names of these online sites reflect the experiences complained of: pissedconsumer.com, ripoffreport.com, and thevictimsofselenefinance.org. Ex. J. Among the 176 complaints posted on those three sites many bare a striking resemblance to plaintiff's claims. For example there are complaints of getting the run around in a short sale context where the listing ended up cancelled as here. An August 2016 posting on Ripoff Report states, "Selene Finance CitiMortgage profit by denial of communication." reports on PissedConsumer.com from October 2018 state Selene as "extremely unprofessional and use unethical practices." The majority of the complaints have to do with allegations that Selene lied or other forms of communication evasion. Ex. J. Selene does no better on the more well known review boards like Yelp and the Better Business Bureau ("BBB"). On Yelp, Selene's customers as recently as January 2019 complained that Selene "say[s] someone will call you back and they don't." The BBB's composite scoring of 40 customer reviews resulted in a score of 1.24 out of 5 and a rating of D comprised of 67% BBB rating and 33% customer review rating. The BBB identified a pattern of complaint where consumers reported difficulty reaching Selene by phone, website, or e-mail. Ex. K.

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

Selene is not exempt from Washington's foreclosure mediation program because it is the beneficiary of deeds of trust in more than two-hundred fifty (250) trustee sales of owner-occupied residential real property. RCW 61.24.166. Indeed, Selene was referred to foreclosure mediation twenty-two (22) times. Dkt. 2-3. Washington's Department of Financial Institution's ("WADFI") Consumer Loan Annual Assessment Report shows Selene is servicing at least 643 loans in Washington amounting to $127,678,834.76. Three hundred sixty seven of those loans are contractually delinquent 30 days or more, and two hundred and forty three of those loans are in loss mitigation. Dkt. No. 12-3.

Defendants' potential for repetition of there deceptive conduct is also shown in plaintiff's charts filed at Dkt. No. 49, pgs. 10-12, ¶46.2 and pgs. 16-18, ¶56.2. The charts compare defendants' conduct in the instant case with allegations made in twenty-one other U.S. District Court cases. For example, the plaintiff in *McGrew v. Selene*, 16-0334, (W.D. Wash.) alleged Selene withheld responses to requests for information, Dkt. No. 49, pg. 12; in *Gunderson v. Selene*, 15-0965 (W.D. Mich.) it was alleged Selene delayed loss mitigation under false pretenses, *Id. at* pg. 11; and in *Cuellar v. Selene*, 17-0729 (E.D. Tex.), it was alleged Selene delayed loss mitigation with long periods of unresponsiveness. *Id. at* pg. 12. Likewise plaintiff shows similar cases against MTGLQ alleging that it and its co-defendant agent made false representations of material facts regarding default mitigation and loan servicing, *Bowser v. MTGLQ*, 15-0154 (New Hamphire), among others. Neither defendant has disputed the similarity between the allegations found in the twenty-one charted cases and the allegations plaintiff makes here.

        **c.    A jury is required to resolve whether defendants'**
                       **bad faith affected the public interest.**

Courts may consider other factors when a complaint involves a private dispute: (1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff,

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

and (4) whether the plaintiff and defendant have unequal bargaining positions. *Michael v. Mosquera–Lacy,* 165 Wash.2d 595, 604–05, 200 P.3d 695 (2009)(citing *Hangman Ridge,* 105 Wash.2d at 791, 719 P.2d 531). The plaintiff need not establish all of these factors, and none are dispositive. *Id.*

**(1).    Whether the defendant committed the alleged acts
in the course of his/her business.**

Selene's business is to service residential mortgage loans and it does so in numerous States. Selene's portfolio focuses on loans that are contractually delinquent and in loss mitigation. *See supra.* Its agency of MTGLQ extended to participating in foreclosure mediation on the phone with counsel present. Dkt. No. 2-1. It was in the course of mitigating plaintiff's default loss that Selene evaded communication with the housing counselor, the mediator, and plaintiff's real estate agent. Dkt No.s 2-1, 3, 4. It was while acting as the beneficiary's agent in foreclosure mediation that its practice of delay and obfuscation led to Selene's bad faith certification. Dkt. No. 2-1.

**(2).    Whether the defendant advertised to the public in general.**

Selene advertises but it came to manage plaintiff's loan by MTGLQ's appointment. Ex. H.

**(3).    Whether the defendant actively solicited this particular plaintiff.**

Again, Selene came to manage plaintiff's loan by MTGLQ's appointment. Plaintiff had no choice with regard to who serviced his mortgage loan. The most notable solicitation was that of entering into the DIL Agreement thus inducing plaintiff to move out of the property.

**(4).    Whether Ms. Tavares and AHFA have unequal bargaining positions**.

Plaintiff and Selene occupy very unequal bargaining positions. Selene failed to communicate regarding the submitted short sale offer for months (Ex. I, pg. 1) and there was nothing plaintiff or his housing counselor could do about it. Defendant's mooted the second foreclosure mediation referral by filing its judicial foreclosure action on Sunday, July 8, 2018, the day before the Monday July 9, 2018 scheduled foreclosure mediation session. Selene's two-year long mitigation evasion along with its documented misrepresentations are a testament to Selene's exploitation of the overwhelming

**PLTFF.'S RESP. IN OPP. TO DEF.S'
MOT. FOR SUMM. JDGMNT
Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

imbalance in bargaining positions. Each one of Selene's delinquent loss mitigation customers are subject to the same imbalance in bargaining position.

### 3. Defendants' Conduct Was The Proximate Cause of Plaintiff's Injuries.

The CPA addresses "injuries" rather than "damages," and so quantifiable monetary loss is not required. *Id.* (*citing Panag*, 166 Wash.2d at 58). "The injury element can be met even where the injury alleged is both minimal and temporary." *Id.* Plaintiff states he was damaged in the form of depleted retirement funds and his extended inability to be near work in Seattle as a result of being unable to dispose of the property. Dkt. No. 11, pg. 4. Plaintiff's credit has been negatively impacted and nearly made him homeless. Ex. L. Plaintiff stayed in the property in compliance with the Deed of Trust's occupancy and preservation terms. Dkt. No. 52-2, pg. 7. Plaintiff was forced to decide between abandoning the property and risk accusations of breaching the deed of trust's terms or using the statutory process of foreclosure mediation to work out a DIL Agreement. Plaintiff stayed in the property because the signed DIL Agreement gave him the impression that title would transfer on May 27, 2018, and he could plan to move out by then. Ex. M. But for Selene's ill-advised squandering of two short sale offers and a signed DIL Agreement, plaintiff would not have been removed from employment, and the opportunity of re-employment for such an extended period, nor would he have been compelled to withdraw from retirement savings from his retirement savings. Dkt. 11, pg. 4.

Selene's delay based on specious denials and a pattern of non-communication injured plaintiff by increasing debt's arrears and costs over more time than necessary. Dkt. No. 4, ¶7, ¶10, Ex. D, pg. 27. As noted above, had defendants not squandered the numerous opportunities to mitigate plaintiff's default the arrears (amount due) would not now be $85,879.27. Ex. A. Now defendants demand a total judgment of $548,029.60 which would render plaintiff insolvent.

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

**C. RESPA**

### 1. Plaintiff establishes showing of defendants' RESPA violation.

12 C.F.R. 1024.41(c)(1) states that if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application a servicer shall:

> **(I)** Evaluate the borrower for all loss mitigation options available to the borrower; and
>
> **(ii)** Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in **paragraph (e)** of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in **paragraph (h)** of this section.

12 C.F.R. 1024.41(c)(1)(i)-(ii). Defendants failed to timely evaluate plaintiff's short sale application in violation of 12 C.F.R. 1024.41(c)(1)(i). Dkt. No. 2-1, Ex. I. Selene never provided the kind of notice described in 12 C.F.R. 1024.41(c)(1)(ii) and left the short sale denial to e-mails conveying specious and illogical demands. Dkt. No. 4, pg. S2-3.

### 2. Defendants Failed to Negate the Fact They Violated RESPA

Defendants have not disputed that they failed to properly evaluate loss mitigation options in a timely manner and instead delayed communication causing the foreclosure mediation to be postponed and ultimately cancelled. Ex.s, E, F, G, & I.

### 3. It Requires a Jury to Determine Whether Selene Violated RESPA.

A short sale is an alternative to foreclosure the request for approval of which is a loss mitigation applications under 12 C.F.R. §1024.31. What remains are triable fact disputes as to how long it took Selene to respond to the short sale application. Ex.s, E, F, G, & I, and plaintiff shows Selene failed to respond in months. Ex. I.

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

**D. Defendant's Breach of The Signed Deed in Lieu of Foreclosure Agreement ("DIL")**

      **1. Plaintiff Establishes Defendants' Breach of The DIL Agreement.**

Selene breached the DIL Agreement by failing to provide the documents necessary to transfer title along with whatever other documents may be required by Selene. Under the DIL Agreement's "COOPERATION WITH CLOSING." That section explains that Selene will provide the documents which transfer title to the Property to the Lender, along with such other documents as may be required by Selene. Dkt. No. 12-6, pg. 4, (¶5.1). The next paragraph in the same section explained that additional pre-closing documents will be required as well as closing attendance. Dkt. No. 12-6, pg. 5, (¶5.2). The conditions precedent set out in the Agreement's "COOPERATION WITH CLOSING" section, stated in ¶¶5.1 and 5.2, never occurred therefore ¶5.3 does not apply and cannot form a realistic basis for breach on plaintiff's part. In fact, by never providing the documents which transfer title and the additional pre-closing documents, Selene rendered performance of the "COOPERATION WITH CLOSING" section impossible.

      **2. Defendants Failed to Negate the Fact They Breached The DIL Agreement.**

The DIL Agreement did not terminate based on plaintiff filing this lawsuit. The lawsuit did not invoke any part of the termination clause. The lawsuit was filed based on the August 2017 foreclosure mediation certification of bad faith against defendants. RCW 61.24.163(14) states,

> The mediator's certification that the beneficiary failed to act in good faith in mediation constitutes a defense to the nonjudicial foreclosure action ***that was the basis for initiating the mediation***.

RCW 61.24.163(14)(a) *emphasis added*. It was important to file the lawsuit then because the trustee effectively withdrew the Notice of Default ("NoD") that initiated the certified mediation. Ex. N. The trustee's August 28, 2017 letter advised the beneficiary that if it wanted, "the Trustee to advance a future non-judicial foreclosure a new Notice of Default will be required to be issued." Ex. N. Under RCW

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

61.24.163(14)(a), the bad faith certification of August 1, 2017 would not be a defense to the non-judicial foreclosure action initiated by the new NoD.

### 3. It Requires a Jury to Resolve Who Breached the DIL Agreement.

Performance of a contract is a question of fact. If a contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance. *U.S. Bank v. Dirwayi*, C17-5532BHS, Dkt. No. 63 (U.S.D.C. W.D. Wash., Sept. 13, 2018) *citing Willener v. Sweeting*, 107 Wn.2d 388, 394 (1986) (citing *Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co.*, 4 Wn.App. 695 (1971)). Here, plaintiff acquired the tax lien release, Ex. O, and had all but moved out by May 23, 2018, 2018. Prior to the deadline plaintiff had substantially performed and simply awaited the title transfer and additional closing documents which Selene never provided. Selene withdrew the DIL Agreement on may 23, 2018 just days prior to the IRS tax lien release expiration and thus the DIL Agreement. It was too late for plaintiff to reverse the move-out.

### E. Defendants' Negligent Misrepresentation

### 1. Plaintiff established Defendants' Negligent Misrepresentation.

Plaintiff sufficiently shows that defendants negligently supplied false information in the course of business, and that plaintiff reasonably and detrimentally relied on the false information. *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 613 (2017). The chart below sets out four different instances where Selene misrepresented the facts plaintiff's detriment.

| Selene Misrepresentation | Date | Record Location |
|---|---|---|
| 1. Selene counsel misrepresented to housing counselor and foreclosure mediator that Selene had reached out to the borrower (Mr. Minie) and realtor (Mr. Lindekugel) multiple times but had not gotten a response | 5/17/17 | Dkt. No. 3, pg. 4, ¶15, Dkt. No. 4, pg. 2, ¶7, Dkt. No. 2-1, pg. 10 (see entries for 5/17/17 and 5/18/17) |
| 2. Selene counsel unrealistically represented subject property was worth $250,000.00 with projected net proceeds also of $250,000.00. Such a proposal is impossible to transact because it fails to take into account customary closing costs (i.e. title, escrow, recording fees, and excise tax, commissions, etc.) | est. 5/22/17 | Dkt. No. 4, pg. 2, ¶7. |
| 3. Selene counsel completed an application for a federal tax lien | est. 4/18/18 | Dkt. No. 12, pg. 6, ¶35. |

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

| | | |
|---|---|---|
| release to the IRS with irrelevant and misleading entries. | | |
| 4.  Selene counsel ("McIntosh") misrepresented to the court that plaintiff's counsel instructed a third party subpoenaed witness to not to produce the documents requested. | 11/11/18 | Dkt. 34, pg 2,  Dkt. No. 36, pgs. 3-4, ¶2, Dkt. No. 36-1, pgs. 3-4, ¶7-8 |

A duty to avoid negligent misrepresentation arises independently of a contract if a defendant's misrepresentation induces the plaintiff to enter into the contract in the first place. *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wn.2d 84, 95 (2013)[4]. A party may also have a duty to disclose material facts peculiarly within that party's superior or specialized knowledge. *Van Dinter v. Orr*, 157 Wn.2d 329, 334 (2006); *Colonial Imports, Inc. v. 24 Carlton Nw., Inc.*, 121 Wn.2d 726, 732 (1993).

Selene owed plaintiff a duty not to commit negligent representation independent of the contractual duties that flowed from the DIL Agreement.  The misrepresentations that plaintiff alleges – namely, that Selene would accurately review his short sales applications, and later would follow through with the DIL Agreement, are two assumptions that induced plaintiff to obtain short sale offers, a federal tax lien release, enter into the DIL Agreement, and prepare to move out of the property.

Additionally, Selene had specialized knowledge of how short sales work and how property titles transfer. The record shows Selene using its specialized knowledge to attempt to sabotage plaintiff's application for a federal tax lien release by completing the IRS tax lien release application with irrelevent and misleading entries. Ex. Q.

---

[4]    In 2010, Washington's Supreme Court did away with the "economic loss rule," and replaced it with the independent duty rule, declaring that the economic loss rule does not bar recovery in tort when the defendant's alleged misconduct implicates a tort duty that arises independently of the terms of the contract. *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 393, 241 P.3d 1256 (2010), *see also Jackowski v. Borchelt*, 174 Wn.2d 720, 730-731, 278 P.3d 1100 (2012). Therefore, Washington courts permit recovery of losses in tort, even if they arise from contractual relationships. For instance, Washington courts recognize the torts of intentional and wrongful interference with another's contractual relations or business expectancies, *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314, 322 (1992); wrongful discharge in violation of public policy, *Smith v. Bates Technical College*, 139 Wash.2d 793, 803-04, 991 P.2d 1135 (2000); failure of an insurer to act in good faith, *American States Insurance Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 469, 78 P.3d 1266 (2003); fraudulent concealment, *Obde v. Schlemeyer*, 56 Wn.2d 449, 452, 353 P.2d 672 (1960); fraudulent misrepresentation, *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462, 457 P.2d 603 (1969); negligent misrepresentation, *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 825, 959 P.2d 651 (1998); breach of an agent's fiduciary duty to act in good faith, *Moon v. Phipps*, 67 Wn.2d 948, 956, 411 P.2d 157 (1966); and negligent real estate appraisal, *Schaaf v. Highfield*, 127 Wn.2d 17, 27, 896 P.2d 665 (1995).

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

**2.      Defendants Failed to Negate the Fact of Its Negligent Misrepresentation.**

Defendants' conclusory statement that the record discloses no misrepresentation conflicts with plaintiff's showing that Selene made misrepresentations to the foreclosure mediator that it had reached out to plaintiff and his representatives regarding the short sale offer when in fact it had not. Dkt. No. 4,, ¶7. Reliance on this misrepresentation delays the process and adds time that incurs additional arrears and cost to plaintiff's loan. It also misled plaintiff into believing Selene was reviewing his short sale application when in fact it was not. Defendants do not deny the fact of any of the misrepresentations. Moreover, plaintiff adequately demonstrated that Selene withheld valuation information even while plaintiff's housing counselor and foreclosure mediator where asking for it. Ex.s E, F, G, & I. Failure to disclose material information establishes negligent misrepresentation. *Van Dinter v. Orr,* 157 Wn.2d 329, 333, 138 P.3d 608 (2006).

Selene had a duty to review plaintiff's short sale application in 30 days, to share valuation information, and to participate in foreclosure mediation in good faith. *Jolley v. Chase Home Fin., LLC,* 213 Cal. App. 4th 872, 901 (2013) (there is no sweeping conclusion that a lender never owes a duty of care to a borrower.)  Selene's conduct in this regard failed to conform to the standards of conduct in the industry that protect plaintiff against further losses associated with the loan. Defendants simply failed to deny they owe a duty.

**3.      It Requires a Jury to Resolve Whether Defendants
Negligently Misrepresented Material Facts .**

Where there is a reasonable doubt as to whether a particular statement is an expression of opinion or the affirmation of a fact, the determination rests with the trier of the facts." Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th at 893. It is plausible that Selene acted unreasonably by failing to review plaintiff's short sale application in good faith, having decided in advance it would deny any offer that did not match their valuation, a valuation derived from an undisclosed June 9, 2017 valuation

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

Arthur  E. Ortiz, Attorney
6015 California Ave. S.W., No. 203
Seattle, Washington 98136
Tel 206-898-5704    arthur@aeolegal.com

report. Ex. I.  Selene disregarded fair market value offers that came within $20,000-30,000 of asking price. Selene neither considered lowering its asking price nor prompted the buyer for a counteroffer.

Washington Supreme Court stated that an exception to the rule barring recovery of emotional distress damages for contract breaches when "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Gaglidari v. Denny's Restaurants, Inc.,* 117 Wn.2d 426, 443, 815 P.2d 1362 (1991) citing RESTATEMENT (SECOND) OF CONTRACTS § 353. The comments to the restatement further elaborate:

> Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.

RESTATEMENT (SECOND) OF CONTRACTS § 353 cmt. a. In the instant case Selene perpetuated an unconscionable process of default mitigation evasion while representing that it was reviewing mitigation options. It squandered two short sale offers, scheduled non-judicial foreclosures, and a signed DIL Agreement forcing plaintiff to move out of his home on the belief that the DIL would give the property back to the beneficiary. Selene did not provide any title transfer documents or pre-closing paperwork ever. The DIL Agreement's deadline[5] came so close that plaintiff felt there was no option but to honor his end of the bargain and move out. After plaintiff had moved out most of his belongings and made arrangements to live elsewhere, Selene terminated the DIL Agreement. Nevertheless, plaintiff was completely moved out by May 27, 2018. In so doing Selene created an uncertain circumstance which risked plaintiff's homelessness. Where a manipulative default mitigation process consisting of a denial conspicuously missing material information, purportedly supporting the denial, supported a verdict in favor of the borrower on the grounds that the borrower was the victim of an "unconscionable process." *Oskoui v. JPMorgan Chase Bank N.A.*, 851 F.3d 851, 857-858 (9th Cir., March 13, 2017). *See also*, *In*

---

5    The DIL Agreement was good for as long as the IRS tax lien release lasted. The IRS lien release was set to expire on May 27, 2018, therefore performance of the DIL Agreement was required before then. Ex. O

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

Arthur  E. Ortiz, Attorney
6015 California Ave. S.W., No. 203
Seattle, Washington 98136
Tel 206-898-5704    arthur@aeolegal.com

*re Breul*, 533 B.R. 782, 796-797 (Bkrtcy.C.D.Cal. 2015)(court found that a reasonable person would suffer significant emotional harm where the defendant took a callous and lackadaisical attitude in remedying its own violation of a discharge injunction by delaying removing a lien which sabotaged an 83 year-old borrower's ability to refinance his home loan); *In re Cutting*, No. 14-60309-7, U.S. Bkrptcy Ct., Dkt. No. 30, pg. 8, Montana, July 15, 2015)(the court found that the emotional distress plaintiffs suffered was distinct from the pressures inherent in the bankruptcy process, where defendants' discharge injunction violations deprived the debtor-plaintiffs of the fresh start they earned in the bankruptcy process); *In re Ogden*, Nos. 15-cv-01274-RBJ, 11-19841-EEB, U.S. Dist. Ct., Colorado, Dkt. No. 19, pg. 21, (March 18, 2016)(the district court affirmed a bankruptcy court's decision-change to award emotional distress damages stating that suffering the uncertainty of whether the Bank was going to foreclose on plaintiff's home on one week's notice would cause any reasonable person to undergo enormous stress, which would be highly likely to result in some negative effect on her physical wellbeing.)

Plaintiff's actions through-out amount to an attempt mitigate his default by using the mitigation options available to him. In return he was put through an unconscionable two-year process in ditect violation of RCW 61.24.005 Findings & Intent (1)&(2). Cancelling the DIL Agreement on May 23, 2018 just days before the May 27, 2018 DIL Agreement expiration, as Selene did caused serious emotional distress because plaintiff was all but moved out when Selene terminated the DIL Agreement, therefore moving out did not advance the process to completion of the DIL Agreement. The ongoing state of arrears creates the specter of an unjust and unreasonable deficiency judgment creating yet more dread, anxiety, and futility.

**F.      Breach of Note and Deed of Trust.**

It is undisputed plaintiff signed the Note and Deed of Trust, however the amounts alleged owed are in dispute. There may be some benefit to considering Defendants' counterclaim at the same time as Plaintiffs' affirmative claims, particularly in light of the alleged CPA violation, due to the possibility

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

that Plaintiffs' damages, and property sale proceeds might offset the debt owed to Defendants thereby enabling resolution. To explore and effectuate such benefit the court may consider invoking Local Civil Rule 39.1(c)(1). See *Gillin v. Nationstar et al.*, 14-1282-MJP, Dkt. No. 35, (W.D. Wash., Sept. 2015.)

**G.   MTGLQ is Not Entitled to Attorney Fees.**

MTGLQ seeks to expand the definition of attorneys fees from construing and enforcing the deed of trust to defending a CPA claim. First there is no dispute as to the underlying default. The CPA claims arose out of defendants' unfair, deceptive, and injurious conduct in loss mitigation, independent of the Deed of Trust. Plaintiff's conduct was in line with the Deed of Trust's enforcement, it was defendants who obstructed the use of every other alternative to judicial foreclosure. *Compare Podbielancik v. LPP Mortg. Ltd. ,* 191 Wn. App. 662, 673 (2015)(borrower alleged defendant, who took the deed of trust by assignment and acquired all rights and obligations thereunder, did not have the right to foreclose.) Here, the claims do not involve MTGLQ's right to foreclose, the claims stem from Selene's unfair and deceptive delay and obfuscation in default loss mitigation. Moreover the attorney fees discussed in *Podbielancik* were fees for prevailing on appeal.

## V.   Conclusion

Defendants' motion is based on omissions, misstatements of fact and law, and does not negate that plaintiff's claims are sufficiently established with disputed facts at issue. For all the above reasons, plaintiff asks the Court for an order denying defendants' summary judgment motion in its entirety.

Dated this 4th day of March, 2019.

The Law Office of Arthur E. Ortiz

_____
**Arthur E. Ortiz, WSBA No. 26676**
**Attorney for Plaintiff**

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704   arthur@aeolegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date given below, I electronically filed the foregoing

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will

send electronic notification of such filing to the following person(s):

Joseph Ward McIntosh, WSBA No. 39470
Attorney for Counterclaim and Third-Party plaintiffs,
McCarthy Holthus, LLP
108 1st Ave., Ste. 300
Seattle, WA 98104-2104
Tel.:     (206) 319-9100
Email:  jmcintosh@mccarthyholthus.com

Dated this 4th day of March, 2019.

_____
Arthur E. Ortiz, WSBA No. 26676
Attorney for Counterclaim-defendant

**PLTFF.'S RESP. IN OPP. TO DEF.S'**
**MOT. FOR SUMM. JDGMNT**
**Noted for Motion March 8, 2019**

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com