# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MARK EDWARD MINIE,<br><br>              Plaintiff,<br>    v.<br><br>SELENE FINANCE L.P., a foreign corporation, and MTGLQ INVESTORS, L.P, a foreign limited partnership,<br><br>              Defendants. | CASE NO. 3:18-cv-05364-RJB<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

    THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment on All Claims against Mark Minie (Dkt. 50). The Court has considered the pleadings filed regarding the motion and the remainder of the file herein. For the reasons provided below, Defendants' Motion for Summary Judgment on All Claims against Mark Minie (Dkt. 50) should be denied.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

# I. BACKGROUND

This case arises from a dispute over a mortgage and foreclosure proceedings. Dkt. 49. Defendants are MTGLQ Investors, L.P. ("MTGLQ"), as the mortgage beneficiary to Plaintiff's defaulted loan, and Selene Finance, L.P. ("Selene"), as the loan servicer and debt collector acting on behalf of Defendant MTGLQ. Dkt. 49, at 2–3. Plaintiff's former place of residence was the real property at issue in this action. Dkt, 49, at 2.

Plaintiff alleges that this case is about Defendants' "refusal to approve a market value offer for sale, … its costly delay, its misleading misrepresentations, and its evasion of regulatory mitigation. These tactics … unecessarily [*sic*] inflated the unpaid principal balance [of the mortgage,] making it more difficult for the fair market value to meet or come close to Selene's unrealistic demanded price." Dkt. 58-1, at 2.

In November 2007, Plaintiff executed a note promising repayment of a $400,000 loan secured by a Deed of Trust encumbering Plaintiff's residential property in Jefferson County, Washington. Dkt. 50, at 2. In June 2015, Plaintiff defaulted on the mortgage. Dkt. 49, at 4. At that time, the Deed of Trust beneficiary and loan servicer was Nationstar Mortgage LLC ("Nationstar"). Dkts. 49, at 4; 50, at 2. Nationstar was represented by Defendants' counsel, McCarthy & Holthus LLP. Dkt. 50, at 3. In February 2017, the Deed of Trust was assigned by Nationstar to MTGLQ, and McCarthy & Holtus LLP took over representation of MTGLQ. Dkt. 50, at 3.

Plaintiff obtained a state-sponsored housing counselor for mediation with the beneficiary. Dkts. 49, at 4; 50, at 3. The beneficiary denied all options that would allow Plaintiff to keep the property and modify the debt due to Plaintiff's previously failed loan modifications and insufficient income. Dkts. 49, at 4; and 50, at 3. By December 2016, Plaintiff apparently had no

options to retain the property. Dkt. 49, at 4. In April 2017, Plaintiff's housing counselor submitted to the parties a proposed short sale contract with a closing date set for the end of May 2018. Dkts. 49, at 3–4; 50, at 3.

Plaintiff alleges that Selene failed to respond to Plaintiff's housing counselor's requests for responses to the short sale offer and excluded Plaintiff's housing counselor from necessary communication. Dkt. 49, at 4. Plaintiff alleges that Defendants' numerous delays required postponement and the eventual termination of the foreclosure mediation. Dkt. 49. Plaintiff also alleges that Selene's lawyer misrepresented attempts to communicate. Dkt. 49, at 4–5.

Plaintiff alleges that Selene unreasonably stated the property was worth more than the sale price, without accounting for the actual condition of the property or customary closing costs. Dkt. 49, at 5. Plaintiff argues that Selene's unreasonable demands "raised the possibility that Selene had either not performed the interior inspection as they stated they would, or they were simply disregarding it." Dkt. 49, at 5.

Plaintiff alleges that, in late June 2017, Selene demanded that the property be sold for $230,000; however, the only offers received had been for $190,000 and $175,000. Dkt. 49, at 5. Mr. Michael Lindekugal, Plaintiff's short sale real estate agent, wrote to the Parties in mediation that he originally listed the property at $275,000 in January 2017. Dkt. 2-1, at 10. Mr. Lindekugal wrote that he dropped the sale price three times in 5% increments ($261,250; $248,167; and $235,759). Dkt. 2-1, at 10. When it appeared uncertain that the $190,000 short sale would be completed, he wrote: "If we have to put it back on the market, then we will have to reduce the price below $235k to get another offer." Dkt. 2-1, at 10.

Plaintiff alleges that, by July 20, 2017, Plaintiff's housing counselor and the foreclosure mediator had not received a substantive response from Selene. Dkt. 49, at 5. On August 1, 2017,

Plaintiff requested to close mediation and have the mediator certify Selene's bad faith participation in foreclosure mediation. Dkt. 2-1, at 17.

On August 1, 2017, the mediator certified Selene's bad faith participation in mediation. Dkts. 2-1, at 3; and 49, at 5.

Plaintiff alleges that "later in 2017, Selene again accepted a short sale approval application from Plaintiff, but again denied the approval using the same unreasonable basis." Dkt. 49, at 6.

The Parties reentered foreclosure mediation. Dkt. 49, at 6. Plaintiff executed a deed-in-lieu of foreclosure agreement ("DIL") requiring Plaintiff to vacate the property, show clear and marketable title, and voluntarily deed the property to MTGLQ. Dkt. 49, at 6. In order to clear title, Selene prepared an application for release of an Internal Revenue Service ("IRS") tax lien from the property, which Plaintiff alleges Selene completed with false and misleading information that would have likely resulted in the IRS's denial of the application. Dkt. 49, at 6. Plaintiff alleges that he later completed the forms through his real estate agent, which required that he pay for an updated appraisal. Dkt. 49, at 6.

On April 27, 2018, the IRS noted that, based on Plaintiff's application, the lien on the property was valueless, so it approved the application with a conditional commitment valid for 30 days, which required Plaintiff to be divested of all rights, title, and interest in the property. Dkts. 2-2; and 49, at 6. Plaintiff alleges that he made arrangements to move before May 27, 2018, and vacated the premises. Dkt. 49, at 7.

On May 9, 2018, Plaintiff filed the instant case against Defendants. Dkt. 1. Plaintiff alleges that, at the foreclosure mediation conference held on May 23, 2018, four days before expiration of the IRS lien release approval, Selene "revok[ed] the DIL Agreement because

plaintiff had filed this lawsuit. Selene invoked the termination clause in the DIL Agreement falsely stating that the litigation affected title to the property or interfered with a valid transfer of clear and marketable title." Dkt. 49, at 7. Plaintiff continues, "Selene's revocation is what affected title to the property by allowing the IRS lien release to expire. Now, title to the property is no longer clear or marketable[.]" Dkt. 49, at 7.

Plaintiff's Second Amended Complaint alleges six claims: (1 & 2) Selene and MTGLQ's violations of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et. Seq.*; (3) Selene's violation of the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601, *et. seq.*; (4 & 5) Selene and MTGLQ's breaches of contract; and (6) Defendants' negligent misrepresentation. Dkt. 58-1.

Defendants argue that numerous facts in Plaintiff's operative complaint "are either demonstrably false or misleading[.]" Dkt. 50, at 6. Defendants counterclaim that Plaintiff defaulted on a loan held by MTGLQ. Dkt. 13. Defendants seeks judicial foreclosure and money judgment on the unpaid debt, including interest and fees over $532,855. Dkt. 13.

Defendants filed the instant motion for summary judgment requesting (1) judgment against Plaintiff on the unpaid debt and a decree of foreclosure, and (2) dismissal of Plaintiff's claims with prejudice.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, discovery and disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); s*ee also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

**B. WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

**C. CLAIMS ONE & TWO[1] - WASHINGTON CONSUMER PROTECTION ACT**

In 2011, the Washington State legislature enacted the Foreclosure Fairness Act ("FFA"), RCW 61.24.163. *Brown v. Washington State Dep't of Commerce*, 184 Wn.2d 509, 514 (2015) (internal citations omitted). "Under the FFA, the Department of Commerce … administers a mediation program to encourage home loan modifications in lieu of foreclosures. In that program, a beneficiary of a deed of trust must mediate with a residential borrower before the borrower's home may be foreclosed." *Id.* "After the notice of default has been issued, the FFA's foreclosure mediation program becomes available to qualified parties. To gain access, a

---

[1] Plaintiff makes separate CPA claims against Selene and MTGLQ. Dkt. 49, at 8, 15. However, the Court considers each claim together. Plaintiff alleges that MTGLQ acted through its agent, Selene. Dkt. 49, at 15. Otherwise, the allegations against both defendants are identical. *See* Dkt. 49.

government-certified housing counselor or an attorney must refer the borrower to the mediation program." *Id.,* at 516. Once "the parties are referred to mediation, the statute directs the borrower and the beneficiary to exchange certain information with each other and with the mediator." *Id.*, at 517. After the exchange of information, the mediator must send written notice to the parties that notifies the parties, that, "among other things, a person with authority to modify the loan must be present in the mediation." *Id.,* at 518. A mediator must certify the results of the mediation, and whether the parties acted in good faith. RCW 61.24.163(10)–(12). "It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the Consumer Protection Act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163." RCW 61.24.135(2)

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.

    1. <u>Unfair Deceptive Act or Practice</u>

Defendants argues that the mediator is not statutorily authorized to "find the beneficiary in bad faith where no mediation occurs …. because Minie unilaterally cancelled it." Dkt. 50, at 11. Defendants continue, "The mediator's bad faith certification against the beneficiary was unauthorized." Dkt. 50, at 11.

Defendant's argument is without merit. To the extent that Defendants collaterally attack the authority of the mediator, that argument is beyond the scope of the instant motion for

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

summary judgment. Plaintiff alleges that he withdrew from mediation only following the beneficiary's abusive delay and lack of substantive participation, for which it received a certification of bad faith. Dkt. 58-1, at 7–9. Pursuant to RCW 61.24.135(2), it appears that Defendants' bad faith participation in mediation may have been an unfair or deceptive act in trade or commerce.

2. Occurring in Trade or Commerce

Defendants do not dispute that its alleged conduct occurred in trade or commerce. *See* Dkt. 50.

3. Public Interest Impact

> In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:
>
> (1) Violates a statute that incorporates this chapter;
>
> (2) Violates a statute that contains a specific legislative declaration of public interest impact; or
>
> (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

RCW 19.86.093.

Regarding a defendant's unfair or deceptive act, a claimant must show "a real and substantial potential for repetition, as opposed to the hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604–05 (2009) (quotation marks and citation omitted).

Defendants argue that the mediator's conduct "was a far departure from how foreclosure mediations are conducted" and that the mediator "effectively torpedo[ed] the mediation when the attorneys did not respond." Dkt. 50, at 12. Defendant continues, "The unusual and ultimately

detrimental handling of the mediation by the mediator in this case is unlikely to be repeated." Dkt. 50, at 12–13.

Defendants appear to argue that it is the public interest impact of the mediator's alleged conduct that is at issue in this motion for summary judgment—as opposed to the public interest impact of Defendants' alleged conduct. Regardless, Plaintiff alleges that Defendants' conduct affects the public interest pursuant to RCW 19.86.093 as violations of statutes incorporated therein and that Defendants' delay and misrepresentations have the capacity to injure other persons. Dkt. 58-1, at 11–15.

Plaintiff offered evidence that "Selene's servicing portfolio involves tens of thousands of loans totaling … billions of dollars." Dkt. 58-1, at 12. Plaintiff also offered evidence that Selene "is servicing at least 643 loans in Washington amounting to $127,678,834.76. Three hundred sixty seven of those loans are contractually delinquent 30 days or more, and two hundred and forty three of those loans are in loss mitigation." Dkt. 58-1, at 13. Plaintiff alleges that numerous consumers have posted complaints against Selene online, and that "[t]he majority of the complaints have to do with allegations that Selene lied or other forms of communication evasion." Dkt. 58-1, at 13.

Therefore, it appears that Defendants' conduct may impact the public interest.

4. <u>Injury to Plaintiff in Business or Property</u>

Defendants argue that Plaintiff "did not suffer any property damages recoverable under the CPA." Dkt. 50, at 13. Defendants continue that Plaintiff is not entitled to recover mediation fees, appraisal fees, or expert fees. Dkt. 50, at 13–14.

Plaintiff alleges that Defendants' conduct caused him $12,487.20 in additional commuting costs, tax consequences of approximately $32,085, over $20,525 in consultant and expert fees, $600 in foreclosure mediation fees, and $700 for a full appraisal. Dkt. 49, at 13.

Although the Court need not determine what fees may be recoverable at this time, it appears that Defendants' alleged conduct may have resulted in some injury to Plaintiff in business or property.

5. Causation

Defendants argue that "[t]he beneficiary had no obligation to approve … the short-sale of the Property for $190,000.00—and Minie cannot claim to have been damaged under [*sic*] as a result of the denial." Dkt. 40, at 13. Defendants continue, "Plus, other foreclosure alternatives could have been explored through mediation with the beneficiary[.]"

Of course, Plaintiff alleges that the beneficiary failed to substantively participate in mediation, which resulted in the Plaintiff being unable to dispose of the property and the mediator issuing a certification of bad faith against the beneficiary. Dkt. 49. Plaintiff further alleges that "[b]ut for Selene's dilatory and misleading conduct plaintiff would not be incurring the additional costs and expenses described above." Dkt. 49, at 13.

Therefore, it appears that Defendants' alleged conduct may have caused injury to the Plaintiff.

6. Conclusion

With respect to the CPA claims, Defendants have failed to meet their burden for summary judgment. Plaintiff has offered numerous specific facts supported by affidavits and declarations that contradict facts offered by Defendants.

## D. CLAIM THREE - REAL ESTATE SETTLEMENT PROCEDURES ACT

Plaintiff asserts a RESPA claim against Selene for violations of RESPA 12 U.S.C. 2605(f), which are enforceable through 12 C.F.R. § 1024.41, "Loss Mitigation Procedures."

> If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
>
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
>
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. 1024.41(c)(1).

Selene offers three arguments against Plaintiff's RESPSA claim. Dkt. 57, at 4–5.

First, Selene argues "[t]here is no authority for the proposition that the above-referenced regulation concerns short sales. The regulation appears to concern repayment plans and specifically cites 'loan modification.'" Dkt. 57, at 4. Defendant cites to no authority whatever for this proposition. Dkt. 57, at 4–5. Regardless, Plaintiff alleges that Selene violated the RESPA when it failed to timely evaluate Plaintiff's short sale application and request for loss mitigation and that it failed to provide important valuation information. Dkts. 49, at 21; and 58-1, at 16.

Second, Selene argues "even if the regulation did concern short sales, the record does not demonstrate a violation. The short sale denial was repeatedly and timely communicated to Minie,

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

and so was the reason (offer too low)." Dkt. 57, at 4–5. Plaintiff asserts that there was "a closing date at the end of May 2018," as corroborated by Plaintiff's housing counselor, Ms. Rebecca Wellnitz. Dkts. 3, at 2; and 49, at 4. Ms. Wellnitz stated that she sent Selene a short sale offer of $175,000 by April 11, 2017. Dkt. 3, at 2. Ms. Wellnitz also stated that she was uncertain that Selene had actually been reviewing the short sale and that she did not receive a counter offer ($270,000) until May 17, 2017. Dkt. 3, at 3–4. Although Selene asserts that its communications were timely, Plaintiff has offered evidence that it may not have been. Dkt. 49.

Third, Selene argues "[t]here is no evidence of record that Minie Suffered recoverable damages by not receiving the short sale denial with a certain timeframe." Dkt. 57, at 4–5. However, Plaintiff alleges that "actual damages amount to $279,172.20, [and] $100,00 for the emotional distress plaintiff suffered[.]" Dkt. 49, at 22.[2]

Therefore, under the RESPA, it appears that Defendants may have failed to timely provide required materials and evaluations to Plaintiff. With respect to the RESPA claim, Defendants have failed to meet their burden for summary judgment.

E. CLAIMS FOUR & FIVE[3] – BREACH OF CONTRACT

To assert a claim for breach of contract, a plaintiff must allege the existence of a valid contract, a breach of the contract, and damages. *See Meyers v. State*, 152 Wash. App. 823, 827, 828 (2009).

Here, only one element is disputed: breach of the contract, for which Defendants offer two arguments. Dkt. 50, at 15–16.

---

[2] This should not be construed as the Court ruling on what damages may be recoverable.

[3] Plaintiff makes separate breach of contract claims against Selene and MTGLQ. Dkt. 49, at 22–24. However, the Court considers each claim together. Plaintiff alleges that MTGLQ acted through its agent, Selene. Dkt. 49, at 23. Otherwise, the allegations against both defendants are identical. *See* Dkt. 49.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

First, Defendants argue that, under the DIL, Minie was obligated to give Selene clear title before the closing date, which it did not do because the property was encumbered by an IRS tax lien. Dkt. 50, at 15.

The DIL provides:

> Homeowner acknowledges that he/she/they must be able to provide clear title to the Property …. If there are such mortgages, judgments, encumberances, or liens, Homeowner acknowledges and agrees that Homeowner shall either pay them in full or negotiate with the other lien holders to release them before the closing date of the Deed-in-Lieu[.]

Dkt. 12-6, at 4.

Plaintiff has offered a copy of the IRS conditional commitment to discharge property from a federal tax lien. Dkt. 2-2. Plaintiff alleges that the conditional release satisfied the DIL's requirement for clear and marketable title. Dkt. 49, at 22.

Second, Defendants argue that Plaintiff's filing of the instant lawsuit breached the terms of the DIL. Defendants provide no authority for this proposition except that "Selene hired the undersigned counsel to represent it, and the undersigned determined the lawsuit was a direct violation of the DIL's fee prohibition under Section 5.3, which triggered termination under Sections 14(b) and (h)." Dkt. 50, at 9.

The DIL provides:

> "Homeowner acknowledges, understands, and agrees that Selene may terminate this agreement at any time if any one or more of the following occur after the Effective Date of this Agreement.
>
> []
>
> b. You fail to act in good faith in the connection with the Agreement.
>
> []

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13

        h. Any of the provisions set forth in Sections 1 through 14 above
          are not met and/or otherwise adhered to.

Dkt. 12-6, at 6.

Section 5.3 of the DIL provides: "Attorney fees, loss mitigation fees, and other fees incurred by Homeowner, if any, will not be paid by Selene." Dkt. 12-6, at 5.

      Plaintiff alleges that the DIL did not terminate because Plaintiff filed the instant lawsuit and that the lawsuit did not invoke any part of the termination clause. Dkt. 58-1, at 18. Plaintiff also alleges that it was important to file the lawsuit because the August 2017 bad faith certification would not be a defense in any subsequent non-judicial foreclosure action. Dkt. 59-1, at 18.

      Therefore, it appears that Defendants may have breached the DIL. With respect to the breach of contract claims, Defendants have failed to meet the burden for summary judgment.

### F. CLAIM SIX – NEGLIGENT MISREPRESENTATION

To prevail on a negligent misrepresentation claim in Washington, a plaintiff must prove by clear, cogent, and convincing evidence that:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Specialty Asphalt & Constr., LLC v. Lincoln Cty.*, 191 Wn.2d 182, 196 (2018) (internal quotation marks and citations omitted).

Defendants flatly deny that any misrepresentations exist in the record. Dkt. 50, at 16–17.

The operative complaint alleges that Defendants knowingly supplied false information in the course of their business that Plaintiff reasonably relied on to his detriment. Dkt. 58-1, at 19.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

Plaintiff—corroborated by the declarations of Ms. Wellnitz, Mr. Lindekugal, and the mediation bad faith certification and log of substantive communications—maintains that there were four distinct instances of misrepresentation. Dkt. 58-1, at 19.

Therefore, it appears that Defendants may be liable under a claim of negligent misrepresentation. With respect to the negligent misrepresentation claim, Defendants have not met the burden for summary judgment.

### G. ALLEGATIONS OF INADMISSIBLE DELCARATIONS

Defendants, in their reply in support of the motion for summary judgment, argue that numerous affidavits and declarations relied upon by Plaintiff were introduced without personal knowledge or are inadmissible in evidence and should be stricken. Dkt. 57, at 2.

Defendants' argument is without merit. "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The relevant materials were appropriate for consideration at summary judgment.

### H. CONCLUSION

Plaintiff has offered specific facts supported by affidavits and declarations that contradict facts offered by Defendants. Indeed, there are disputed issues of material fact all over this case. Defendants have failed to meet their burden for summary judgment on all claims. Therefore, the Court should deny Defendant's motion for summary judgment (Dkt. 50).

## III. ORDER

Therefore, it is hereby **ORDERED** that Selene and MTGLQ's Motion for Summary Judgment on All Claims against Mark Minie (Dkt. 50) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 22nd day of March 2019.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge